BANK OF DERMOTT v. MEASEL.

Opinion delivered November 23, 1926.

1. CORPORATIONS—NOTE GIVEN FOR STOCK.—Under Const. 1874, art. 12, § 8, prohibiting the issuance of stock by private corporations except for money or property actually received, a note given to such a corporation for the purchase of stock in it is void.

2. CORPORATIONS—LOANS FOR PURCHASE OF STOCK.—Under Const. 1874, art. 12, § 8, prohibiting the issuance of stock by private corporations except for money or property actually received, *held* that a corporation cannot lend money to a subscriber to purchase its own capital stock.

3. CORPORATIONS—CONSIDERATION FOR ISSUANCE OF STOCK.—The substance, and not the form of a transaction, is controlling whether Const. 1874, art. 12, § 8, prohibiting the issuance of stock by a private corporation except for money or property actually received, has been violated.

4. CORPORATIONS—VOID NOTE—EFFECT OF RENEWAL.—A note given in renewal of a note for the purchase of stock in a private corpora-

tion which was void under Const. 1874, art. 12, § 8, is likewise void, the same defense being available to the maker in a suit on the renewal note as in a suit on the original note.

5.  BILLS AND NOTES—RENEWAL NOTE.—A renewal note is- not a payment of an original note, but merely an extension of the time of payment.

6.  COSTS—DISCRETION OF CHANCELLOR.—The taxation of costs is within the discretion of the chancellor.

Appeal from Chicot Chancery Court; *E. G. Hammock,* Chancellor; affirmed.

### STATEMENT OF FACTS.

The Bank of Dermott sued C. M. Measel to recover $900 and the accrued interest alleged to be due upon a promissory note.   The suit was defended on the ground that the note was void because it was given for stock in a private corporation, and was therefore void under § 8, art. 12, of the Constitution of the State of Arkansas.

The note sued on was introduced in evidence.   It is for $900, and dated July 2, 1921.   It is payable to the order of the Dermott Bank & Trust Company three months after date, and was duly transferred to the Bank of Dermott.

C. M. Measel was a witness for himself.   According to his testimony, he made a contract with the Dermott Bank & Trust Company to purchase shares of its capital stock, and executed his note therefor in the sum of $750. When the note became due, it was renewed, and finally the witness executed his note for $900, which included the interest and principal upon the original note, and $78.38, which Measel owed the bank on another debt. At the time he executed the note in question, Measel also executed two other notes payable to the Dermott Bank & Trust Company.   One of these was for $200 and the other was for $800.   These notes were executed for the purpose of securing the money with which to purchase shares of stock in the Dermott Grocery Company.   Both of these notes were subsequently paid.

C. A. Franklin was also a witness for the defendant. While his testimony is not so clear and positive as that

of the defendant himself, still it corroborates the defendant's testimony in every essential matter. According to the testimony of Franklin, he was cashier of the Dermott Bank & ·Trust Company at the time the transactions involved in this case were had. Measel gave two notes to the Dermott Bank & Trust Company to secure money with which to purchase stock in the Dermott Grocery Company, and subsequently paid these notes. He first gave a note to the bank for $750 for shares of stock in the bank. This note was renewed, and finally Measel gave his note to the bank for $900, which included the principal and interest of the original note, and the further sum of $78.38, which Measel owed the bank.

The Dermott Bank & Trust Company went into the hands of the Bank Commissioner, and the Bank of Dermott acquired all its assets and became its successor in business. In rebuttal, the plaintiff introduced in evidence the record from the ▪ Dermott Bank & Trust Company, made at the time the transactions involved in this case were had. The bank's record shows that Measel borrowed $1,750 from the bank. Seven hundred and fifty dollars of this money was used in purchasing shares of stock from the bank and the balance was used in purchasing shares of stock in the Dermott Grocery Company.

The chancellor found that the note sued on was executed by C. M. Measel in consideration of stock in the Dermott Bank & Trust Company sold him by said bank, and that all of said note ought to be canceled except $78.38, which Measel owed said bank on another debt. A decree was entered of record in accordance with the findings of the chancellor, and, to reverse that decree, the plaintiff has duly prosecuted an appeal to this court.

*John Baxter,* for appellant.

*Martin A. Threet,* for appellee.

HART, J., (after stating the facts). Section 8, article 12, of our Constitution provides that no private corporation shall issue stock or bonds except for money or property actually received, or labor done. It is con-

ceded that, in the construction of this clause of our Constitution, this court has held that a note given for the purchase price of corporate stock is neither money nor property actually received, within the meaning of the Constitution, and the note itself is void. *Bank of Commerce* v. *Goolsby,* 129 Ark. 416, 196 S. W. 803.

In that case the court said: "When notes are taken in exchange for stock, it is a palpable violation of the constitutional provision, because notes are merely evidences of indebtedness, and such a transaction shows upon its face that the stock has not been paid for. The design of the framers of the Constitution was that stock should not be issued and sold except for its value in money or property actually received, or labor done. A note is not property, in the sense of the Constitution, because it only indicates that the stock has not, in fact, been paid for, and, where the notes are worthless, the stock has been exchanged for nothing. Notes are not money and not bankable paper, but mere choses in action, and it in no sense meets the requirements of the above provision of the Constitution to accept a note in exchange for stock."

The language here used is too plain to be misunderstood, and this is conceded by counsel for the plaintiff. He earnestly insists, however, that the substance of this transaction is that Measel first borrowed some money from the bank and subsequently used it in the purchase of its capital stock. This contention, however, is contrary to the evidence. Both Measel and Franklin, who was cashier of the bank at the time, testified that the gist of the transaction was that Measel executed his note to the bank for shares of its capital stock. The purpose of the constitutional provision was to protect creditors of the corporation, as well as stockholders who had purchased stock in the corporation and had actually paid money or property therefor. The words, "actually received," mean the receipt of something tangible and which could be used in the payment of the debts of the corporation. If the bank could lend money and the same

money could be immediately used in payment of the stock of the bank, it is plain that the clause of the Constitution under consideration would serve no useful purpose. The substance, and not the form, of the transaction should be looked to. A preponderance of the evidence shows that the defendant never borrowed a dollar from the bank. The original note simply represents the amount of money which he agreed to pay the bank for stock which it had issued to him. To call it by another name could not in the least change the real character of the transaction. If the corporation could not take the note of a subscriber in payment of its own capital stock, it is plain that it could not lend money to a subscriber to its own capital stock in payment of it. This would be a palpable evasion of the Constitution. There is no more a payment of money where the corporation lends the money to the subscriber and then receives it back in payment of the stock than where it receives a note originally in payment of a stock subscription. *Watts* v. *Worcester Umbrella Co.,* 193 Mass. 138, 78 N. E. 886.

Again, it is insisted that the note sued on, being a renewal of the original note, takes the case out of the inhibition of the Constitution. We cannot agree with this contention. The same defense which the maker of the note might have made to an action by the holder of the note originally given by him may be made by him in this action on the note given in renewal of the original note. Both notes were given for the same illegal consideration. The renewal note is not a payment of the original note, but is merely an extension of the time of payment of such prior note. In *Hollan* v. *American Bank of Commerce & Trust Co.,* 159 Ark. 141, 252 S. W. 359, it was held that a contract is itself usurious which is issued in renewal of the usurious contract. Again, in *City National Bank* v. *DeBaum,* 166 Ark. 18, 265 S. W. 648, it was held that contracts made in violation of law are not rendered valid by renewal or by subsequent promises to pay them. If the law were otherwise, the constitutional

provision under consideration would have no practical use. A subscriber of capital stock of a corporation might execute a short-term note in payment of it, and, by executing a renewal contract when the original note became due, could validate the contract which had been declared illegal and void by the Constitution itself.

Finally, it is insisted that the court erred in taxing the cost in the case. The chancellor taxed two-thirds of the cost to the plaintiff and one-third to the defendant. It is well settled that the taxation of the costs is within the discretion of the chancellor. *Mt. Nebo Anthracite Coal Co.* v. *Martin,* 86 Ark. 608, 112 S. W. 882, and *Hayes* v. *Bankers' & Planters' Life Assn. of Ft. Smith,* 164 Ark. 202, 261 S. W. 296. In the case at bar, the principal sued on was $900, and the amount received by the plaintiff was only $78.38. It is evident that the plaintiff has no cause of complaint as to the taxation of costs.

The result of our views is that the decree of the chancery court was correct, and it will therefore be affirmed.