STRANAHAN, HARRIS & OATIS, INC., *v.* VAN BUREN COUNTY.

Opinion delivered December 5, 1927.

1. COUNTIES—AUTHORITY TO ISSUE BONDS.—Although an order of the county court directing a bond issue under Acts 1925, p. 608, was made within less than 30 days of the publication of the amount of the county's outstanding indebtedness, this did not deprive the county court of jurisdiction to issue bonds where the bonds were not to be issued until the expiration of 30 days after the publication of the order.

2. COUNTIES—ESTOPPEL TO QUESTION VALIDITY OF BONDS.—Where the county court made an order under Acts 1925, p. 608, authorizing the issue of bonds to pay outstanding debts of the county, and the bonds when issued conformed to the court's order, and contained recitals that the law had been complied with in their issuance, and the county had received the proceeds from the sale, it was estopped to question their validity.

3. MANDAMUS—COMPELLING QUORUM COURT TO LEVY TAX.—The quorum court may be compelled by mandamus to meet as a court and levy a tax not exceeding three mills on a dollar of assessed valuation of property to pay the interest on the outstanding bonded indebtedness of the county, and the amount of the bonds matured for payment, the word "may," used in Amendment No. 11, being construed as "shall."

4. MANDAMUS—REQUIRING QUORUM COURT TO LEVY TAX.—Where bondholders were entitled to payment in accordance with the terms of the original order of the county court, authorizing a bond issue to pay outstanding debts of the county, and it was the duty of the quorum court to make necessary levy to insure payment, bondholders were not required to wait until default before bringing mandamus to require the quorum court to levy tax to pay interest and matured bonds.

5. MANDAMUS—RIGHT OF BONDHOLDER TO ENFORCE PAYMENT OF BOND. —One who sold a part of a bond issue of the county is entitled to sue in a State court to enforce payment of the interest and

bonds, though a holder of another portion of such bonds had
brought suit in the Federal court for the same purpose.

Appeal from Van Buren Circuit Court; *J. F. Koone,*
Judge; reversed.

*W. H. Holmes, Harry E. Meek* and *Robinson, House
& Moses,* for appellant.

*Opie Rogers,* for appellee.

SMITH, J.   Appellants applied to the circuit court
of Van Buren County for a writ of mandamus requiring
the county judge and the justices of the peace of that
county, composing the quorum court, to meet as such and
levy a tax, not exceeding three mills on the dollar of the
assessed valuation of the property of the county, to pay
the interest on the outstanding bonded indebtedness of
the county and the amount of the bonds which had
matured for payment.   The circuit court denied the relief
prayed, and this appeal has been duly prosecuted from
that order.

On March 1, 1926, the county court of Van Buren
County, by an order duly entered on the records of that
court, found and declared the outstanding indebtedness
of the county to be $77,475.25, and directed that notice of
that fact be given pursuant to the requirements of act 210
of the Acts of 1925 (Acts 1925, page 608).   Notice of this
order was duly published in a local newspaper in the
issue of March 8.   On March 16, 1926, the county court
made an order, which recited the previous order ascer-
taining and declaring the amount of the county's out-
standing indebtedness and the publication of the notice
thereof, and directed that the bonds of the county be
issued and sold in the principal amount of $63,591.35 to
discharge and pay, to that extent, the outstanding indebt-
edness of the county.   It appears to be conceded that the
revenue which would be derived from a levy of three mills
on the dollar on the assessed valuation of the county
would not produce a revenue sufficient to pay the entire
outstanding indebtedness, but would be sufficient only to
pay the interest and mature bond issue as it matured in
the amount authorized by the order of March 16.

This order of the court recites that the proceeding was had under the authority of the amendment to the Constitution proposed by Senate joint resolution No. 2, authorizing the submission of the amendment to be voted on as Amendment No. 11, appearing at page 797 of the General Acts of 1923, and of the act No. 210, above referred to, passed as an enabling act after the adoption of the proposed amendment.

The order of March 16 further provided the recitals which the bonds should contain, and that they should be signed by the county judge of the county and countersigned by the clerk of the county court of the county. It was there directed that the bonds so to be issued should contain the following recitals:

"It is hereby certified, recited and declared that all acts, conditions and things required to be done, exist and be performed precedent to and in the issuance of this bond, in order to make this bond a legal, valid and binding obligation of Van Buren County, Arkansas, have been existing and been performed in legal and due time, form and manner as required by law; that provision has been made for the collection of a direct tax upon all taxable property within said county sufficient to pay the principal and interest hereof as the same shall fall due, and that the indebtedness represented by this bond and the issue of which it forms a part, together with all other outstanding indebtedness of said county, does not exceed any constitutional or statutory limitation; and for the prompt payment of principal and interest of this bond, as the same becomes due, the full faith and credit of Van Buren County, State of Arkansas, are hereby pledged. Should this bond prove to be invalid for any reason, then and in that event the holder hereof shall be subrogated to the rights of the creditors of Van Buren County whose indebtedness has been discharged by the issuance of this bond."

On April 8, 1926, the county court made a third order "in the matter of funding the outstanding indebtedness of Van Buren County, Arkansas." This order recited the

previous orders and repeated the findings of fact in
regard to the ascertainment of the amount of the county's
outstanding indebtedness and of the publication of the
notice thereof.  This order also recited that, pursuant to
the constitutional amendment and the enabling act above
referred to, the county had contracted to sell $60,000 in
5½ per cent. serial funding bonds to Stranahan, Harris
& Oatis, and had given the purchaser the option ''to con-
vert same to 5 per cent. bonds at the same yield basis to
the county, and which option the purchaser hereby exer-
cises, and which amount, under the conversion to a 5 per
cent. bond, would substantially be $63,591.35.''  Act 210
specifically authorized this conversion of bonds.  This
order also provided the form of the bond and the recitals
it should contain and the manner of its attestation, in
which respects the order of April 8 was identical with
that of March 16.  ·

Shortly after the entry of the order of April 8 the
bonds were issued and delivered to the proposed pur-
chasers, who paid into the treasury of the county the full
value thereof.  These bonds contained the recitals author-
ized by the orders of March 16 and April 8, and were
signed by the county judge and countersigned by the
county clerk, as both orders of the county court required
that they should be.

At the trial from which this appeal comes, testimony
was offered to the effect that the chancery court of Van
Buren County convened on the first Monday in April,
which was the 5th day of the month, and the time
appointed by law for that court to convene, and that the
April term of the county court did not convene until two
weeks after the first Monday in April.  The county judge
of the county, who presided at all the sessions of the
county court herein referred to, testified that the sessions
of that court held on March 1 and on March 16 were
adjourned terms of the January term of the court, and
that, on the date last mentioned, the county court was
adjourned to the 8th day of April, and a session of the
court was held pursuant to this adjourning order, at

which he presided, and that the clerk of the court and the sheriff of the county were in attendance at that session. Upon this showing the circuit court held "that the county court of Van Buren County did not convene on the first Monday in April, 1926 (the time fixed by law for the convening of said court), but attempted to adjourn the January term of said court on the 16th day of March, 1926, over to the 8th day of April, 1926," because the chancery court convened on the 5th day of April. Upon this finding of fact the circuit court declared that the county court was not in session on April 8, and that its order made that day was void, and the bonds were therefore issued without authority of law.

We do not find it necessary to determine whether the judgment of the circuit court in regard to the validity of the session of the county court held on April 8 is correct or not, and we do not therefore decide that question, for the reason that the order of March 16 was valid, and, if this is true, it was not necessary that there should have been a subsequent order. The only objection made to the validity of the order of March 16 is that it was made within less than thirty days of the publication date of the order of the county court of March 1, which ascertained and declared the amount of the outstanding indebtedness of the county.

Section 1 of act 210 of the Acts of 1925 provides that, before the issue of any county bonds under that act, the county court shall, by order entered upon its records, declare the total amount of such indebtedness, and that such order of the county court shall be published immediately for one insertion in some newspaper published in the county, and that any property owner who is dissatisfied with the published finding as to the amount of the indebtedness may question the correctness thereof by suit in the chancery court, which suit must be instituted within thirty days after the publication of such order. It is there further provided that, if no such suit is brought within thirty days, such finding shall be conclusive of

the total amount of such indebtedness, and not open to further attack.

The obvious purpose of this provision is to prevent the issuance of bonds in excess of the outstanding indebtedness, and it may be first said that it is admitted that the indebtedness of the county was in excess of $77,000, whereas bonds were issued in an amount less than $64,000.

It may be next said that no suit was ever brought by any property owner of the county, and, as more than thirty days expired before the issuance of the bonds, the recitals of the publication order have the verity which the statute was intended to give.

It is not contended that the bonds were issued or delivered prior to the expiration of the thirty days immediately following the publication order, and it will be noted that neither the amendment nor the enabling act requires the time for filing suit to expire before an order can be made authorizing the issue of the bonds. The inhibition is that the bonds shall not be issued prior to that time, and, as we have said, this was not done.

In Webster's New International Dictionary the following definitions of the verb "issue" are found: "To go, pass, or flow out; to run out, as from any inclosed place." "To be produced as an effect, result, or outcome; to proceed as from a source; to arise; to be derived; to result." "To be given or sent out officially or publicly; to be published, as a proclamation; to be emitted, as money." "To deliver, or give out, as for use; as, to *issue* provisions." "To send out officially; to deliver by authority; to publish or utter; to put into circulation; to emit; as, to *issue* an order; to *issue* a writ; to *issue* notes."

The same authority gives to the word "issue" as a noun the following definitions, among others: "Act of sending out, or causing to go forth; delivery; issuance; as, the *issue* of an order from a commanding officer; the *issue* of money from a treasury." "Law. Of a negotiable instrument, the first delivery of the instrument,

as a bill or note, complete in form, to a person who takes it as a holder. This is the definition of the British bills of exchange act, 1882, and of various American codes.''

The word ''issue'' is defined in 33 C. J., page 818, as follows: ''As a verb, to bring to a conclusion or final issue; to come or pass out; to go out; to go forth as authoritative or binding; to proceed, as from a source; to proceed or arise from; to send forth; to send out officially; to settle.''

It was held in the case of *Cumnock* v. *Little Rock*, 168 Ark. 777, 271 S. W. 466, that the amendment, designated as Amendment No. 11, was self-executing, and, while the General Assembly had the right, notwithstanding that fact, to prescribe the manner in which the right there conferred might be exercised, it does not appear that the provisions of the enabling act of 1925 have been violated.

The validity and binding effect of the order of March 16 is questioned only because it was made within less than thirty days of the publication of the order of March 1, and, as we have shown, that fact did not deprive the county court of the jurisdiction to make an order authorizing the issue of bonds which were not to be issued and were not issued until the expiration of the thirty days after the publication of the order of March 1.

It is not questioned that the county received the proceeds of the sale of the bonds, nor that the county had the right to issue the bonds; nor is it questioned that the county court had the jurisdiction to authorize the issue of county bonds. The bonds, when issued, conformed to the order of the county court, and contained the recitals set out above, to the effect that the law had been complied with in their issuance. Under these circumstances the county is estopped from questioning their validity.

The case of *Aurora* v. *Gates*, L. R. A. 1915A, page 910, contains elaborate notes on the subject of estoppel of municipal corporations to deny validity of bonds issued by them, and, after a very extended review of numerous

cases dealing with this subject, the annotator announces the following as the general rule:

"It is a general rule that a municipality which, by the apparent legality of its obligations, by recitals of their validity or by other means, has induced innocent purchasers to invest in them, is estopped to deny their legality on the ground that, in some preliminary proceedings which led to their execution, or in the execution itself, it failed to comply with some law or rule of action relative to the mere time or manner of procedure, with which it might have lawfully complied, but which it carelessly disregarded."

It is finally insisted for the affirmance of the judgment of the court below that it was not alleged in the complaint or otherwise shown that the quorum court had failed in its duty, inasmuch as the necessity for the levy was not shown, as the constitutional amendment permits the county to discharge its obligations out of any funds available, the language thereof being that the court "may" levy a tax not exceeding three mills on the dollar of the assessed valuation, and it is insisted that the discretion thus vested in the county court should not be controlled by mandamus.

It is true that this court held, in the case of *Pioneer Construction Co.* v. *Madison County,* 174 Ark. 298, 296 S. W. 729, that mandamus would not lie against the county court to compel the issuance of bonds to refund the county's indebtedness, as provided for in the constitutional amendment, this being upon the theory that the failure so to do did not deprive the holder of the evidence of indebtedness against the county of any remedy existing at the time of the adoption of the amendment. This failure to issue bonds did not impair the indebtedness or extinguish any remedy for its collection possessed by the holder thereof prior to the adoption of the amendment. But the discretion vested in the county court was either to issue or not to issue the bonds. Once this discretion had been exercised by issuing bonds, the discretion was at an end. It is inconceivable that

the court should have any discretion in the matter of making provision for the payment of the bonds, once the discretion to issue them had been exercised.

Section 4 of the enabling act of 1925 provides that: "Before or after the issue of said bonds, the quorum court of such county * * * shall levy a tax, which, on the existing assessed value of the property of such county, * * * will suffice to retire said bonds as they mature, with five per cent. added for unforeseen contingencies; provided, that said tax shall not exceed three mills on the dollar of such assessed value." This section of the enabling act also provides that the rate may be lowered when a rate so high is not required, but it further provides that "no tax shall be levied which will produce less than the sum required to meet the maturities of the bonds, with five per cent. added for unforeseen contingencies, nor shall any tax in excess of three mills on the assessed value existing at the time of such levy ever be levied in any year."

In the case of *Washington County* v. *Davis,* 162 Ark. 335, 258 S. W. 324, it was said: "In *Pirani* v. *Barden,* 5 Ark. 81; *Spratley* v. *La. & Ark. Ry. Co.,* 77 Ark. 412, 95 S. W. 776; and *C. R. I. & P. Ry. Co.* v. *Jager,* 85 Ark. 232, 107 S. W. 1170, this court has recognized that the word 'may' is often interpreted to mean 'shall.' The general rule of construction is that the word 'may' is construed to mean 'shall' whenever the rights of the public or third persons depend upon the exercise of the power or the performance of the duty to which it refers" (citing authorities).

The levy of this tax is the security provided by law for the payment of the bonds and the interest thereon, and it was upon the faith of this statute, and the amendment as well, that the bonds were sold, and the enforcement of the right of the holders of these bonds to be repaid the money invested in them is dependent upon the action of the court in levying the tax, and in such case the word "may" must be construed as meaning "shall."

In the recent case of *Chicago Mill & Lbr. Co.* v. *Drainage District No. 17,* 172 Ark. 1059, 291 S. W. 810, it was held that, where the commissioners of a drainage district, which had issued bonds, determined the amount necessary to be raised by taxation to discharge the maturing bonds and the interest thereon, the court, having the power and being under the duty to levy the tax, could be compelled by mandamus to do so.

The order of the county court authorizing the bond issue provided the dates of maturity of the bonds, the first being in October, 1927, and it is shown that the quorum court, at its 1926 session, failed and refused to make the levy necessary to meet the 1927 maturity. No order of the county court is necessary, as counsel for the county insist, to determine the county's liability in the year 1927. The original order of the county court authorizing the bond issue determined that fact.

The bondholders are not required to wait until default has actually occurred on the part of the county. They are entitled to payment in accordance with the terms of the original order of the county court under which the bonds were sold, and it is the duty of the quorum court to make the necessary levy to insure payment.

A motion to dismiss the present appeal has been filed by the county upon the ground that the holders of certain of the bonds sold originally to appellants have brought suit in the Federal District Court against the county to enforce the payment of the bonds. It appears, however, that, while the appellants bought the entire bond issue, they have sold $20,000 of the bonds to an insurance company, and it is that company which has brought suit in the Federal court. It is not essential that appellants should own the entire issue to obtain relief by mandamus, as the owner of only one of the bonds would, in a proper case, be entitled to that relief.

The motion to dismiss the appeal is therefore overruled.

It follows from what we have said that the circuit court was in error in refusing to award the writ of mandamus as prayed, and the judgment of that court will be reversed, and the cause remanded to the circuit court, with directions to award relief by mandamus as prayed, by directing the quorum court to levy a tax sufficient to discharge the maturing bonds and the interest on all of them, not exceeding, however, three mills on the dollar of the assessed valuation of the property of the county.