BANK OF MANILA *v.* WALLACE.

Opinion delivered May 7, 1928.

*Little & Buck,* for appellant.

*J. F. Gautney,* for appellee.

MEHAFFY, J. The appellant brought suit against the appellee in the Craighead Circuit Court to recover on a note of $1,400 given by the appellee to C. A. Thompson.

Appellee admitted the execution of the note, but denied liability on the ground that Thompson was the agent of the Jonesboro Cotton Mills, and that the note was given for stock in the Jonesboro Cotton Mills; that the sale of the stock to Wallace for which the note was given was made for the corporation.

The appellant contended that the note was given to Thompson, and not to the corporation, for stock, and that it was an innocent purchaser.

After hearing the testimony the court directed a verdict in favor of the appellee, and appellant prosecutes this appeal to reverse said judgment.

The appellee testified that he gave the note for stock in the Jonesboro Cotton Mills, a corporation; that he bought it from Thompson, but that Thompson was representing the corporation, and the note was given for stock of the corporation. No stock was ever issued to appellee. The note was executed on the 10th of March, and the appellant's witnesses testified that, on the 14th of March, Thompson came to the bank with the note and that the bank purchased it, discounting it $80 because the interest rate was 8 per cent., whereas the bank charged more than that.

Testimony shows that Mr. Shaver, the president of the bank, called up Robert Braden of the Monette Bank and asked him if he would consider Mr. Wallace's note good for about $1,400. Braden thought the note was good, but asked him if it was in connection with the purchase of stock, and, when Mr. Shaver said it was, Braden told him he would have trouble collecting it, because Mr. Wallace had talked to Braden about being dissatisfied with the deal.

There is no dispute about this conversation between Shaver and Braden, and no dispute about the fact that it occurred before the Bank of Manila purchased the note.

It is also shown by the appellant's witnesses that the bank told Thompson that it would not buy the note without a letter from Wallace; that a letter was written in the bank at the same time, on the 14th of March, and Thompson took it, and came back after a while with a letter signed by Wallace.

The president of the bank testified that he had this letter from Wallace before he purchased the note, and that he did not know at the time he purchased the note that the Jonesboro Cotton Mills had any interest in it. That he assumed that Thompson had sold Wallace some of his stock. Thompson had told Shaver that he owned a good deal of stock, and was going to buy more. He thought it was Thompson's because Thompson was in possession of it.

It would serve no useful purpose to set out the testimony in detail. The testimony on the part of appellee tended to show that the note was given for stock of the corporation, and that it was void because given by Thompson for the corporation for capital stock, and that the bank bought it with knowledge.

The evidence was sufficient to justify the court in submitting to the jury, first, whether the note was given for stock of the corporation and whether Thompson was simply acting for the corporation, and, second, whether the appellant was an innocent purchaser.

If the note was given for stock in the corporation and Thompson was merely acting for the corporation, selling its stock, then, under the law as settled by the decisions of this court, the note was void. And if the bank was not an innocent purchaser, it could not recover.

Section 8 of article 12 of the Constitution provides that no private corporation shall issue stock or bonds except for money or property actually received or labor done. In construing this section of the Constitution this court has said:

"When notes are taken in exchange for stock it is a palpable violation of the constitutional provision, because notes are merely evidences of indebtedness, and such a transaction shows upon its face that the stock has not been paid for. The design of the framers of the Constitution was that stock should not be issued and sold except for its value in money or property actually received, or labor done. A note is not property in the sense of the Constitution, because it only indicates that the stock has not, in fact, been paid for, and, where the notes are worthless, the stock has been exchanged for nothing. Notes are not money and not bankable paper, but mere choses in action, and it in no sense meets the requirements of the above provision of the Constitution to accept a note in exchange for stock." *Bank of Commerce* v. *Goolsby,* 129 Ark. 416, 196 S. W. 803; *Bank of Dermott* v. *Measel,* 172 Ark. 193, 287 S. W. 1017.

If Thompson was representing the bank, selling the stock for it, and accepted a note in payment of the stock, the note is void. This would be an evasion of the Constitution and doing a thing indirectly which the Constitution prohibits. It is argued, however, that the corporation actually got money. It got money by discounting the note at the bank, if appellee's theory is correct, but that does not alter the fact that the note was originally taken for the stock. If a corporation could sell its stock, take a note and go to the bank and discount it, and thereby make valid the void contract, the provision of the Constitution would have no effect.

This court said in the case of *Bank of Dermott* v. *Measel,* 172 Ark. 193, 287 S. W. 1017:

"If the corporation could not take the note of a subscriber in payment of its own capital stock, it is plain that it could not lend money to a subscriber to its own capital stock in payment of it. This would be a palpable evasion of the Constitution. There is no more a payment of money where the corporation lends the money to the subscriber and then receives it back in payment of the

stock than where it receives a note originally in payment of a stock subscription.''

In this case, if the note was actually given for the stock it was void. And the fact that the corporation, or Thompson for the corporation, afterwards sold the note and the corporation received the money, would not affect the invalidity of the note.

In the case of *City National Bank* v. *DeBaum*, 166 Ark. 18, 265 S. W. 648, it was held that contracts made in violation of law are not rendered valid by renewal or by subsequent promises to pay them. If the law were otherwise, the constitutional provision would have no practical use.

This court said in a recent case: ''It was admitted that the stock for which the note was given was sold in violation of the Blue Sky Law, and the court instructed the jury that the burden was upon the appellee to show that it was an innocent holder. The only thing necessary for appellant to show, in order to entitle him to a verdict, was that the appellee knew that the note was given for stock of the corporation which had been sold in violation of the law.'' *Fentress* v. *City National Bank*, 172 Ark. 171, 290 S. W. 58.

It is a question of fact to be determined by the jury from the evidence whether the appellant was an innocent purchaser. And, as stated in the case last mentioned, if appellant knew that the note was given for stock of the corporation, then it was not an innocent purchaser, and this question should have been submitted to the jury.

The court therefore erred in directing a verdict and in its failure to submit the questions of fact to the jury. For these errors the judgment is reversed, and the case is remanded for a new trial.