ELLIS *v.* JONESBORO TRUST COMPANY.

Opinion delivered May 27, 1929.

*W. E. Spence* and *Dudley & Dudley,* for appellant.

*Horace Sloan,* for appellee.

SMITH, J. The Jonesboro Trust Company, a banking corporation under the laws of this State, sued W. S. Ellis to recover the sum of $1,875, with accrued interest, alleged to be due upon a promissory note payable to the order of the trust company, dated May 10, 1927, and maturing October 10, 1927.

The material facts in the case are covered by a stipulation of opposing counsel, from which it appears

that in 1922 the State Bank Commissioner found and declared that the capital stock of the trust company had become impaired, and he ordered the bank to make a voluntary assessment of fifty per cent. on its shares of stock, failing which he advised that he would require a compulsory assessment of that amount. Pursuant to this requirement, the directors of the trust company passed a resolution reciting the necessity for the assessment and the opinion that it would be voluntarily paid "without the technical procedure required by law for the purpose of making and enforcing such assessments."

It was resolved by the board of directors that a voluntary assessment of fifty per cent. be made, to be paid as follows: "(1) In cash, or (2) by the execution of a note by the shareholders to the company for the full amount of said assessment, said note to be dated June 1, 1922, to mature June 1, 1923, and to bear interest at six per centum from date until paid."

The resolution of the directors further provided that, if shareholders owning seventy-five per cent. of the entire capital stock shall have complied with the terms of the voluntary assessment on or before June 1, 1922, then the cash or notes delivered thereunder should become the property of the trust company, to be used and employed by it as any other property it may own; otherwise they should not be used by the trust company until, through the making of a compulsory assessment as required by law, stockholders holding in the aggregate seventy-five per cent. of the capital stock (including in said computation cash and notes so delivered voluntarily) shall have met such assessment. It was further recited that, in case voluntary assessments on seventy-five per cent. of the capital stock shall have been complied with on or before June 1, 1922, the trust company should have until July 1, 1922, to procure the remaining stockholders to comply with the voluntary assessment; "and if, at the last mentioned date, any

shareholder shall not have met said voluntary assessment, then a compulsory assessment shall be made in accordance with the laws of this State in such cases made and provided."

Some of the stockholders paid the amount of their assessment in cash, while others, including Ellis, gave notes, instead of paying money. Ellis renewed his note at a higher rate of interest than that borne by the original note, but default was made in the payment of both the principal and the interest on the renewal note, and this suit was brought to enforce its payment.

After making the voluntary assessment in 1922, it became apparent in 1927 that the trust company was again insolvent, and it sold such of its assets to the American Trust Company, another banking institution, as the latter company would buy. Under the terms of this sale the American Trust Company paid all the depositors of the Jonesboro Trust Company in full, and it was agreed that the Jonesboro Trust Company should be indebted to the American Trust Company for a sum representing the difference between the agreed value of its assets actually taken over by the American Trust Company and the total of the debts assumed. This agreement left the Jonesboro Trust Company with a number of notes, which it is seeking to collect and apply to its debt to the American Trust Company, and the note of Ellis is among this number. The proceeds of the collection of the note will be turned over to the American Trust Company to apply on the debt of the Jonesboro Trust Company to it, so that, while the suit was brought by the Jonesboro Trust Company, it is for the benefit of the American Trust Company.

Ellis filed an answer, denying liability on the note, and alleged that the note was taken to satisfy the Bank Commissioner, and was not intended to be paid; but there appears to have been no attempt to establish this allegation. It was further alleged that the note had not been executed pursuant to an assessment under the

statute; and that the note was without consideration. It was also alleged that the note was void under § 8 of article 12 of the Constitution and the decisions of this court construing this section of the Constitution. A decree was rendered granting the relief prayed, which included the setting aside of a deed conveying certain lands from Ellis to his sons. There appears to be no question that the deed was properly set aside if Ellis is, in fact, liable on the note.

It is true that the assessment in satisfaction of which the original note of Ellis was given was voluntary in the sense that it was not made under the authority of the statute (§ 733, C. & M. Digest), as it might have been; but it does not follow from this that the note was without consideration. A condition existed which would have authorized the statutory assessment, and the voluntary assessment forestalled the statutory assessment. The payment of money and the execution of notes by other shareholders were in the nature of mutual promises, to the advantage of all parties concerned. *Farmers' Equity Coop. Assn.* v. *Tice,* 122 Kan. 127, 251 Pac. 421; *Farmers' State Bank* v. *Fisher,* 204 Iowa 1049, 216 N. W. 709; *Bohning* v. *Caldwell,* 10 Fed. (2d) 298; *Union Bank of Brooklyn* v. *Sullivan,* 214 N. Y. 332, 108 N. E. 558; *Stern* v. *McDonald,* 47 Col. App. 79, 190 Pac. 221; *Farmers' Coop. Union* v. *Reynolds,* 127 Kan. 16, 272 Pac. 108. The note is therefore not without consideration. It appears that all the notes have been paid except the one here sued on and a small balance on another note.

We are also of the opinion that the note is not void under § 8 of article 12 of the Constitution, which reads as follows:

"No private corporation shall issue stocks or bonds, except for money or property actually received or labor done, and all fictitious increase of stock or indebtedness shall be void; nor shall the stock or bonded indebtedness of any private corporation be increased, except in pur-

suance of general laws, nor until the consent of the persons holding the larger amount in value of stock shall be obtained at a meeting held after notice given for a period not less than sixty days, in pursuance of law."

In construing this section of the Constitution it has been several times held by this court that a note given to a private corporation for the purchase price of corporate stock is neither money nor property actually received within the meaning of the Constitution, and that such a note is void, except in the hands of an innocent purchaser, as having been executed in violation of the Constitution. *Bank of Commerce* v. *Goolsby,* 129 Ark. 416, 196 S. W. 803; *Bank of Dermott* v. *Measel,* 172 Ark. 193, 287 S. W. 1017; *Bank of Manila* v. *Wallace,* 177 Ark. 190, 5 S. W. (2d) 937; *Park* v. *Bank of Lockesburg,* 178 Ark. 669, 11 S. W. (2d) 483. We have also held that a renewal note, as well as the original note, is subject to the same defense, for the reason that "both notes were given for the same illegal consideration. The renewal note is not a payment of the original note, but is merely an extension of the time of payment of such prior note." *Bank of Dermott* v. *Measel, supra.*

But the cases cited have no application here. In the first of these cases—that of *Bank of Commerce* v. *Goolsby, supra*—it was pointed out that: "The above plain provision of our Constitution is for the protection of stockholders, as well as creditors and all who are interested in the financial affairs of private corporations. This wholesome provision of our Constitution is a guaranty to all who are financially interested in private business corporations, against the issuance of what is termed 'watered stock,' that is, 'stock which purports to be paid in full but which, in fact, has not been paid for.' "

There was here no issue or increase of stock or of indebtedness of the corporation in connection with the execution of the note. Ellis received no stock. His stock had been previously issued to him and had been paid for by him, and, instead of "watering the stock,"

his note was intended to give it a value which it would not otherwise have had. Since the constitutional prohibition is directed against the issuance of "watered stock," it cannot be construed to prohibit a stock assessment note executed to give value to stock already issued, paid for, and outstanding.

Section 8 of article 12 of the Constitution of Missouri is substantially identical with § 8 of article 12 of our own, and in the case of *Scott* v. *Abbott*, 160 Fed. 573, the Circuit Court of Appeals of the Eighth Circuit had occasion to construe the words "issue" and "fictitious" appearing in this section of the Missouri Constitution. It was there said:

"The word 'issue' here employed is obviously used in its ordinary commercial or financial sense, meaning 'to emit,' 'put into circulation,' or 'dispose of securities' already authorized and prepared for disposition. Black's Law Dictionary; Century Dictionary; *Folks* v. *Yost*, 54 Mo. App. 55, 59. The word 'fictitious' employed in the Constitution is found in immediate connection with the prior provision relating to the issue of stock, and, by the most natural and familiar rule of construction, ought to be construed in connection with it; and as so construed it means, in our opinion, that all increases of capital stock which are not issued for money paid, labor done, or property actually received, are fictitious and void. The record discloses that the shoe company disposed of or put into circulation much, if not all, of its increased stock. Such disposition, in our opinion, amounted to the issue of the stock within the contemplation of the constitutional provision."

This definition of the word "issue" accords with our own definition of that word in the case of *Stranahan* v. *Van Buren County*, 175 Ark. 678, 300 S. W. 382, where we construed the constitutional amendment authorizing counties to "issue bonds."

There was therefore no issue of stock to Ellis or fictitious increase of stock or indebtedness, and the con-

stitutional inhibition has no application. Neither do the above-cited cases which have construed this section of the Constitution apply.

The decree of the court is correct, and it is therefore affirmed.