TAYLOR v. GORDON.

Opinion delivered December 23, 1929.

754

*W. P. Strait,* for appellant.

*Edward Gordon,* for appellee.

McHANEY, J. Appellants brought separate actions against appellees, Gordon and Lucas, to recover from Gordon on a promissory note $1,907.65 and interest, and from Lucas $2,400 and interest, both notes being dated January 12, 1926, and given to the Bank of Morrilton in renewal of previous notes given to said bank in July, 1925, in payment for 40 shares each of said bank's stock of the par value of $1,000. In the case of Gordon $500 was paid to said bank in cash by check as part of the purchase price, and note given for $2,000, while in the case of Lucas no cash payment was made, and his note was for $2,500. In January, 1926, a dividend was declared and paid, and credited on these notes, thereby reducing them to the amounts above stated.

This stock was bought under the following circumstances: Loid Rainwater, president of the Bank of Morrilton, was, in July, 1925, appointed State Bank Commissioner. He desired to dispose of his stock in said bank, and induced appellee Stover to take it over and dis-

pose of it to others. He advised the Echols heirs, children of his sister, who were also stockholders, and are appellees here, to dispose of their stock, which they did, acting through Rainwater and Stover, at a price of $2.40 on the dollar. Stover called upon Gordon and Lucas, advised them the bank had some stock for sale, that it was worth three or four for one, was a good buy at $2.40 on the dollar; that they desired to place same with friends of the bank, and urged them to buy. He told them the bank would take their notes for same, and that the dividends would in time pay it out. Each of them agreed to purchase $1,000 par, for which Gordon gave his check to the bank for $500 and his note for $2,000, and Lucas gave his note for $2,500 as above stated. The Echols stock had already been surrendered and paid for by Stover, apparently by taking the bank's money and charging same to his account, without any authority from the board of directors to do so. When he received Gordon's check and the two notes, they were turned over to the bank, and his account credited therewith.

On March 18, 1926, Gordon executed his note to the bank for $431.20 for money borrowed. In December, 1926, the Bank of Morrilton was found to be wholly insolvent, and was placed in the hands of appellant Bank Commissioner for liquidation. Its assets, including said notes, were sold to appellant First State Bank, and this suit involved not only said notes but an assessment of 100 per cent. against all stockholders.

There was a decree canceling said stock purchase notes, permitting Gordon to offset his liability on the note for borrowed money and a small overdraft against his cash payment for stock, and denying a recovery against Gordon and Lucas on account of the 100 per cent. stock assessment. There was an alternative prayer in the complaint that, in the event no recovery was had against Gordon and Lucas, judgment might be had against Stover and the Echols heirs, both for the money of the bank unlawfully used in the purchase of the stock

and the 100 per cent. assessment. The trial court made no disposition of this latter prayer.

We think the court correctly denied a recovery against Gordon and Lucas. If the bank's money was used to acquire the Echols stock, and we think the evidence sufficient to justify the holding that it was, then the bank became the owner of the stock, and, when it was sold, the evidence is sufficient to sustain the finding that it was sold as the bank's property. Gordon and Lucas both say it was sold to them by Stover as the stock of the bank; and, while this is denied by Stover, the circumstances support Gordon and Lucas. The cash payment by Gordon was a check made payable to the bank, and not to Stover; both notes were made to the bank, and not to Stover; the Echols stock transferred to Gordon and Lucas was never in Stover's name, but was transferred from Echols directly to them. The bank, having furnished the money to pay for the stock, became at least the equitable owner thereof, and, through its cashier, attempted to make a sale of same to Gordon and Lucas by taking their notes for the purchase price, in violation of law. Section 8, article 12, Const. 1874; *Bank of Commerce* v. *Goolsby,* 129 Ark. 416, 196 S. W. 803; *Bank of Dermott* v. *Measel,* 172 Ark. 193, 287 S. W. 1017; *Bank of Manilla* v. *Wallace,* 177 Ark. 190, 5 S. W. (2d) 937.

Nor do we think there has been a ratification of the sale. The stock was never actually delivered, but was issued and retained by the bank. No meetings of stockholders were attended by them, and, while a dividend was credited on their notes and renewal notes executed, they did not know a dividend had been paid. They repudiated the transaction as soon as they discovered the true situation.

We decline to pass upon the liability of Stover or the Echols heirs, as the chancery court has not done so. If Stover, without authority, wrongfully took the money of the bank and used it to purchase or take up outstand-

ing stock, he and all those participating in the fraud with knowledge thereof, either directly or through an agent, would be liable to make restitution to the bank, and, if it were in fact insolvent at that time, equity would require them to bear the burden of the statutory liability of stockholders.

The decree will therefore be affirmed as to Gordon and Lucas, but as to all others will be remanded for further proceedings.