BANK OF MANILA *v.* WALLACE.

Opinion delivered June 16, 1930.

*Little & Buck,* for appellant.

*J. F. Gautney,* for appellee.

KIRBY, J. This is the second appeal of this cause. For a statement of the case and the decision on the former appeal reversing and remanding it, see 177 Ark. 190.

The judgment was reversed because the court had erroneously directed the verdict. It was there said: "It is a question of fact to be determined by the jury from the evidence whether the appellant was an innocent purchaser. And, as stated in the case last mentioned, if the appellant knew that the note was given for stock of the corporation, then it was not an innocent purchaser, and the question should have been submitted to the jury."

It appears from the testimony that the bank purchased the note sued on, made by J. D. Wallace to C. A. Thompson, before it was due, paying the amount thereof less the discount. That Wallace, the maker, gave the note to C. A. Thompson for "stock in this cotton mill over here," the Jonesboro Cotton Mills. That the stock was never delivered to him. "I was to have stock in that plant they were putting up, but I never did get none;" admitted writing the letter of March 14 to the Bank of Manila, saying it is agreeable with me for you to purchase my note in the amount of $1,480 given to C. A. Thompson for stock in the Jonesboro Cotton Mills, Inc. Said note is dated March 10, 1925, and due in 90 days from date.

Braden testified that he knew the maker of the note, the man C. A. Thompson and Mr. Shaver of the Bank of Manila, who talked with him about the purchase of the note, and that Mr. Shaver called on the phone, and asked if he considered "Uncle Tuck" Wallace or J. D. Wallace's note good, and I told him it was good for whatever amount he mentioned, but, knowing that "Uncle Tuck" was dissatisfied with some notes he had given for stock in the Jonesboro Cotton Mills, I told him Mr. Shaver that, if it was one of those notes, that he would better be careful about buying it, because Mr. Wallace was dissatisfied with his deal, and would perhaps give him trouble about collecting it. Witness was the cashier of the Citizens' Bank of Monette at this time.

Judge Gregg testified he had some stock in the Jonesboro Cotton Mills, and was a director in it, and knew C. A. Thompson, who was acting as agent of the Cotton Mills making sales of its stock—selling stock generally for the Cotton Mills; was one of the board of directors which authorized Thompson to sell the stock, and in some cases he would take notes when he could not get the cash and had authority to do so; thought he was agent at the time stock was bought by Mr. Wallace. He was to sell stock for the company and get commissions on it not

taking subscriptions. Some of the stock sold by Thompson was issued. Did not know whether the particular stock purchased by Wallace was issued or not.

Appellant asked for a directed verdict, and the court gave two instructions to the jury, defining an innocent purchaser in the first and instructing the jury that the bank would not be an innocent purchaser if it knew the note sued on was given, either to the Cotton Mills company or the agent of the Jonesboro Cotton Mills, for stock in that concern; otherwise under the evidence in the case it would be. In instruction No. 2 the jury was told that the law presumed the bank to be an innocent purchaser for value without knowledge of any defects in the note, and that the burden of showing that the bank was not an innocent purchaser was on the defendant, and, unless it found that the bank had knowledge that the note was given to the Cotton Mills company or its agent for stock in the Jonesboro Cotton Mills, then it must find for the plaintiff.

The jury returned a verdict in favor of appellee, from which the bank appealed.

The bank insists that the court erred in refusing to direct a verdict in its favor, and in giving instruction No. 1, and that the verdict is contrary to the evidence and the instructions given.

The bank had notice that the note was given for stock in the Jonesboro Cotton Mills, Inc.; that the stock had never been delivered; that Thompson was the authorized agent of the cotton mills, making sales of its stock, and also was informed, before discounting the note, by the cashier of the other bank where the maker of the note kept his account, that the maker was good for the amount of the note, but that, if it was one given for stock in the cotton mills, they would better be careful about buying it because "Mr. Wallace was dissatisfied with his deal and would perhaps give him trouble about collecting it."

While it is true the testimony does not show that the stock sold, for which the note was taken, was not the property of C. A. Thompson, the seller and payee of the note, the reasonable inference necessarily arose from the testimony introduced that it was stock of the cotton mills sold by Thompson, the authorized agent of the mills, in the usual course of business; and, the testimony was also sufficient to show that the discounting bank had such notice of the transaction that warranted the jury in finding that it was not an innocent purchaser for value of the note sued on. We find no error in the record, and the judgment is affirmed.