## GARRISON CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9181.

Circuit Court of Appeals, Eighth Circuit.

Jan. 25, 1932.

J. B. Grice, of Washington, D. C., for petitioner.

Norman D. Keller, Sp. Asst. to the Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key and John H. McEvers, Sp. Assts. to the Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and J. E. Marshall, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before VAN VALKENBURGH, BOOTH, and GARDNER, Circuit Judges.

BOOTH, Circuit Judge.

This is a petition for review of a decision of the Board of Tax Appeals, and involves redetermination of income and profits taxes of the petitioner for the year 1920.

The question of the value of petitioner's depreciable assets, which was also before the Board of Tax Appeals and was covered by its decision, is not involved on this appeal.

The short facts are as follows: The petitioner was incorporated under the laws of the state of Arkansas in 1919, having 2,000 shares of capital stock of $100 par value. Five individuals subscribed for 999 shares of the stock and paid for the same, $55,000 in cash for 550 shares, and their promissory notes amounting to $44,900 for 449 shares. The makers of the notes were solvent. The stock issued for the notes was thereafter held by the corporation as security for the payment of the notes.

The Commissioner, in his audit of the petitioner's return for 1920, excluded from the computation of invested capital the face amount of the notes, namely, $44,900. This action of the Commissioner was affirmed by the Board of Tax Appeals.

The question on this review is whether promissory notes in the face amount of $44,900, or any portion thereof, may be included in taxpayer's invested capital for 1920 as cash or tangible property bona fide paid in for stock under section 326 of the Revenue Act of 1918 (40 Stat. 1092).

The term "invested capital" is defined in the Revenue Act of 1918 as follows:

"Sec. 326. (a) That as used in this title the term 'invested capital' for any year

means (except as provided in subdivisions (b) and (c) of this section): * * *

"(2) Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of such payment, but in no case to exceed the par value of the original stock or shares specifically issued therefor, unless the actual cash value of such tangible property at the time paid in is shown to the satisfaction of the Commissioner to have been clearly and substantially in excess of such par value, in which case such excess shall be treated as paid-in surplus."

The term "tangible property" is defined in section 325 (a) as follows:

"Sec. 325. (a) That as used in this title— * * *

"The term 'tangible' means stocks, bonds, notes, and other evidences of indebtedness, bills and accounts receivable, leaseholds, and other property other than intangible property."

The basis of the action of the Commissioner and the Board of Tax Appeals was the provision in Article 12 of the Constitution of Arkansas, reading as follows:

"Article 12.

"*Issue and Increase of Stock of Private Corporations.*

"Sec. 8. No private corporation shall issue stocks or bonds, except for money or property actually received or labor done, and all fictitious increase of stock or indebtedness shall be void; nor shall the stock or bonded indebtedness of any private corporation be increased, except in pursuance of general laws, nor until the consent of the persons holding the larger amount in value of stock shall be obtained at a meeting held after notice given for a period not less than sixty days, in pursuance of law."

This provision of the Arkansas Constitution has been construed by the courts of that state in several cases:

In Bank of Commerce v. Goolsby, 129 Ark. 416, 196 S. W. 803, the Supreme Court of that state held that the taking of a note by a corporation in exchange for its capital stock was a violation of the constitutional prohibition.

In Bank of Manila v. Wallace, 177 Ark. 190, 5 S.W.(2d) 937, it appeared that Wallace had bought from one Thompson stock in the Jonesboro Cotton Mills, a corporation, and had given Thompson a promissory note in payment. Thompson discounted the note at the appellant bank, and it brought suit thereon against Wallace. The issues in the case were, first, whether Wallace bought the stock of the corporation through Thompson as its agent, or bought stock owned by Thompson; second, if the stock bought was the stock of the corporation, whether the bank was an innocent purchaser of the note. The court in its opinion said (page 192 of 177 Ark., 5 S.W.(2d) 937, 938):

"The evidence was sufficient to justify the court in submitting to the jury, first, whether the note was given for stock of the corporation, and whether Thompson was simply acting for the corporation; and, second, whether the appellant was an innocent purchaser.

"If the note was given for stock in the corporation and Thompson was merely acting for the corporation, selling its stock, then, under the law as settled by the decisions of this court, the note was void. And, if the bank was not an innocent purchaser, it could not recover."

See, also, Krumpen v. Taylor, 183 Ark. 1046, 40 S.W.(2d) 775; Lepanto Gin Co. v. Barnes, 182 Ark. 422, 31 S.W.(2d) 746; Bank of Dermott v. Measel, 172 Ark. 193, 287 S. W. 1017.

Petitioner cites and relies largely upon two cases: Ellis v. Jonesboro Trust Co., 179 Ark. 615, 17 S.W.(2d) 324, 325, and Memphis, etc., R. R. v. Dow, 120 U. S. 287, 7 S. Ct. 482, 30 L. Ed. 595.

In the Ellis Case, suit was brought by the trust company, which was a banking corporation, against Ellis upon a promissory note which had been given by him to the trust company to cover a voluntary assessment which had been authorized by the board of directors of the trust company because of impairment of capital as found by the State Bank Commissioner. Among the defenses set up by Ellis to the note was an allegation that the note was void under section 8 of Article 12 of the Arkansas Constitution and the decisions of the Supreme Court of Arkansas. In reference to this defense, the Supreme Court in its opinion said:

"We are also of the opinion that the note is not void under section 8, of article 12, of the Constitution. * * *

"In construing this section of the Constitution it has been several times held by this court that a note given to a private corporation for the purchase price of corporate stock is neither money nor property actually received within the meaning of the Constitution, and that such a note is void, except in

the hands of an innocent purchaser, as having been executed in violation of the Constitution. * * *

"But the cases cited have no application here. * * *

"There was here no issue or increase of stock or of indebtedness of the corporation in connection with the execution of the note. Ellis received no stock. His stock had been previously issued to him and had been paid for by · him, and, instead of 'watering the stock,' his note was intended to give it a value which it would not otherwise have had. Since the constitutional prohibition is directed against the issuance of 'watered stock,' it cannot be construed to prohibit a stock assessment note executed to give value to stock already issued, paid for, and outstanding."

The Dow Case, while it involved the construction of section 8, article 12, of the Constitution of Arkansas, did not involve that part of the section construed in the cases cited above. In the Dow Case the question involved was whether certain bonds issued by a railroad corporation were fictitious as having been issued without any consideration received in money, property or labor. It was held, under the facts disclosed, that the bonds had not been so issued as to be fictitious.

In the case at bar, the question is whether promissory notes taken by an Arkansas corporation in payment for its stock are valid. The Dow Case does not pass upon that question.

It is further contended by petitioner that results from transactions that are in violation of state law, and not enforceable contracts in the state, are still recognized for federal tax purposes if they are of a kind that would otherwise come within the Revenue Acts.

It is unnecessary to discuss the proposition thus generally stated for the reason that the transaction in the case at bar does not come within its terms.

Treasury Department Regulations 45 (1920 Edition), Article 833, reads as follows:

"Art. 833. *Tangible Property Paid in: Evidences of Indebtedness.*—Enforcible notes or other evidences of indebtedness, either interest-bearing or noninterest-bearing, of the subscriber received by a corporation upon a subscription for stock may be considered as tangible property in computing its invested capital to the extent of the actual cash value of such notes or other evidences of indebtedness at the time when paid in, but only (a) if such notes or evidences

of indebtedness could under the laws of the jurisdiction in which the corporation was organized legally be received in payment for stock, and (b) if they were actually received by the corporation as absolute, and not as conditional, payment in whole or in part of the stock subscription."

It is plain from the language of the regulation that the promissory notes in the case at bar could not be considered tangible property in computing the corporation's "invested capital" for the reason that such notes could not, under the laws of Arkansas, be legally received in payment for stock. The notes in question in the hands of the corporation were void and valueless.

The final suggestion of petitioner is that, though the promissory notes taken by the corporation for 449 shares of stock are void, yet the 550 stock certificates paid for in cash and representing $55,000 can be considered to represent also $44,900 as surplus.

We think the suggestion finds no support in section 326 (a) (2) or in the cases cited by petitioner, and is without merit. No surplus of assets was created by the corporation or received by it by taking void notes in payment for its stock and holding the stock as collateral.

In view of the provision above quoted contained in the Constitution of the state of Arkansas, and the decisions of its courts construing the same, we think the decision of the Board of Tax Appeals was right, and it is affirmed.