**J. Folse ROY, Plaintiff,**

v.

**John W. RECKER and Raymond Recker, A Partnership, d/b/a Recker Brothers, and Recker Bros. Rice Dryer, John W. Recker, Individually, and Exa A. Recker, Defendants.**

**No. J-61-C-53.**

United States District Court
E. D. Arkansas,
Jonesboro Division.

Dec. 6, 1963.

Harry L. Ponder, of Ponder & Lingo, Walnut Ridge, Ark., for plaintiff.

Leon B. Catlett, of Catlett & Henderson, Little Rock, Ark., E. J. Ball, of Ball & Trumbo, Fayetteville, Ark., for defendants.

YOUNG, Judge.

This court has jurisdiction to hear the above styled case; the sum in controversy is in excess of $10,000.00, exclusive of interest and attorneys' fees, and complete diversity of citizenship exists between the plaintiff and all the defendants.

744

The matter at issue is a motion for summary judgment filed by the defendants. There is no dispute of fact between the parties insofar as the issues raised by this motion are concerned.

Briefly stated, the facts are: Defendants allegedly made a promissory note payable to United Enterprises in consideration of one share of stock, representing a one-quarter interest in that company. United Enterprises, by its president, Arnold E. Edens, later assigned the note to the plaintiff, and plaintiff now sues the defendants on the said note.

For the purposes of this discussion, let us assume that the last sentence of the plaintiff's brief, in which he states:

"If the plaintiff Roy is not a holder in due course then he cannot recover, but whether he is such a holder is a question of fact, so that the motion for summary judgment is not appropriate, and should be dismissed."

correctly states the law. See Bank of Manila v. Wallace, 177 Ark. 190, 5 S.W.2d 937 (1928); Ellis v. Jonesboro Trust Co., 179 Ark. 615, 17 S.W.2d 324 (1929).

But this leaves us with the problem of determining whether or not the plaintiff, Roy, actually is a holder in due course,[1] and as a matter of law I find that he is not such a holder.

The note in question—a demand note for $413,000.00 [2]—was negotiated to Roy two years, three months, and nineteen days after delivery by the maker to the payee.

No interest was ever paid on the note; however, as indicated by Note 2, there are credits, shown on the note, totaling the sum of $199,500.00.

Defendants correctly contend that " * * * a promissory note payable on demand must be transferred within a reasonable time to give the holder the status of a purchaser before maturity * * *." Annot., Demand Note—Purchase Before Maturity, 60 A.L.R. 649 (1929); see also Ark.Stats.Ann. § 68–153 (1947). This annotation also teaches us—as does the only Arkansas case in point [3]—that the circumstances in each particular case are determinative of this issue. Further, the cases and text material [4] indicate that a demand note is issued to circulate for only a short period of time, and that in the few cases which the courts have held that a demand note was not mature after several months or longer usually something "extra" was involved in the case; e. g., payment of interest regularly or periodically. Defendants urge that there is no such "extra" involved here; that no interest has been paid on the note. And this is true, but it should be noted that the note itself

1. If Roy bought the note after an unreasonable length of time had expired between the issue of the note and the said transfer, he would not be a holder in due course. Ark.Stats.Ann. § 68–153 (1947). Further, if he was not a holder in due course he could not enforce the obligation against the defendants; Article 12 Section 8 of the Arkansas Constitution prohibits the issuance of stock by a private corporation for a promissory note, and the Arkansas case law has held that a note ostensibly used to purchase the stock is also void. See Bank of Manila v. Wallace, supra; Ellis v. Jonesboro Trust Co., supra.

2. The original note was made for $413,-000.00, $400,000.00 of which was in payment of one share of stock in United Enterprises; $13,000.00 was an amount allegedly owed by John and Exa Recker to the Security Bank and Trust Company, Paragould, Arkansas, which United Enterprises was to repay.

$199,500.00 worth of credits had already been made on the note, and Roy brought suit to recover $60,400.00—the amount United Enterprises owed him—with interest thereon at the rate of 8% per annum and $12,080.00 as attorney fees.

3. Kerby v. Wade, 101 Ark. 543, 142 S.W. 1121 (1912).

4. E.g., see cases collected in Annot., 60 A.L.R. 649 (1929); cf., 2 Joyce, Defenses to Commercial Paper § 687, § 750, § 751 (1924), and Brannan, Negotiable Instruments Law § 53, § 193 (6th ed. 1938) (citing cases).

shows credits—the last of which is dated July 10, 1959, some ten months prior to the transfer from United Enterprises, Inc. to Roy—on the note totaling $199,500.00.

It is true that the Arkansas case [5] which defendants rely upon held that a demand note only one month and twenty-eight days old at the time of transfer was mature, but in that case the Arkansas Supreme Court also held that the instrument [6] " * * * was so peculiar and out of the ordinary course * * * as to put appellant upon inquiry, which, if pursued, would have disclosed circumstances to prove that the note was past due."

Let us, then, consider the facts in this case. On April 18, 1958, Recker Brothers, Recker Bros. Rice Dryer, John W. Recker and Exa A. Recker allegedly executed (defendants deny any such execution) a note to United Enterprises, Inc. for $413,000.00. On August 6, 1960—two years, three months and nineteen days after delivery—the note was assigned—along with a number of other notes, a deed to real estate, and corporate stocks, as additional security for the payment of a pre-existing debt—to the plaintiff. Appearing on the note are credits consisting of the following:

| | | |
|---|---|---|
| 1. | 4/1/58 – Salad Bowl Property | $ 22,500.00 |
| 2. | 12/1/58 – Fund Account | 16,000.00 |
| 3. | 7/21/59 – By check to Farmers Grain Co. | 36,000.00 |
| 4. | 7/24/59 – Rice Dryer Property | 100,000.00 |
| 5. | 10/7/59 – Assignment Farm Property | 25,000.00 |

The plaintiff made no inquiry of the defendants with regard to the note.

Here, then, we have a situation where the plaintiff, a business man, for additional security on a pre-existing debt, accepts an unsecured demand note which he knew was over two years old, for a face value of $413,000'00, less credits of $199,500.00; one of which was dated fourteen days *before* the note was made. Further, the last credit was dated ten months prior to the transfer.

It appears to me that these facts, without question, present a picture of a note "* * * so peculiar and out of the ordinary course * * * as to put appellant upon inquiry, which if pursued, would have disclosed circumstances to prove that the note was past due." And I therefore hold, under the authority of Kerby v. Wade, supra, that this note was not transferred within a reasonable length of time, and Roy took the note subject to any defenses which might have been raised by the maker against the payee.

Further, there can be no doubt that Article 12, Section 8 of the Arkansas Constitution would preclude an action by the payee of the note against the maker, and, in light of the above discussion, the plaintiff is also precluded.

Defendants' motion to dismiss is granted, and judgment will be entered for the defendants.

5. Kerby v. Wade, supra note 3.

6. A mortgage and note were involved in this case which provided: " 'The sale is on the condition that, whereas, I am justly indebted unto * * * in the sum of one hundred dollars, evidenced by a note of even date therewith, due after date with interest. Now, if I shall pay said moneys at the times and in the manner aforesaid, then the above conveyance shall be null and void,' etc."

The Court then went on to say: "The mortgage was dated November 11, 1908. The alleged assignment was January 9, 1909. It will be observed that the mortgage recites that the note which it was executed to secure was 'due after date.' According to the mortgage, therefore, there was no date fixed for the maturity of the note which it was given to secure. It was, not even due on demand; at least, it could not be considered as anything more than demand paper, if that."