WOOLRIDGE *v.* THIELE.

Decided October 24, 1891.

*Sale—Fraud—*Bona fide *purchaser.*

> Upon a sale and delivery of goods induced by fraud, the title passes to the vendee, subject to the vendor's right of rescission; and where another, without notice of the fraud, purchases them from the vendee, paying for them partly in cash and partly by releasing an existing debt, he will be protected as a *bona fide* purchaser.

APPEAL from *Clay* Circuit Court, Eastern district.

J. E. RIDDICK, Judge.

*L. L. Mack* for appellant.

1. Appellant is an innocent purchaser for value without notice of any fraud on the part of his vendor. 17 Am. Rep., 208–210; 1 Jones on Mortg., secs. 458–9, 710; 2 L. C. in Eq., Wh. & Tud., p. 85–6; 63 Ala., 450; *ib.*, 336; *ib.*, 561; 63 Ind., 576; 54 Ia., 14; 55 Miss., 348; 1 Perry, Trusts, sec. 239; 12 Barb., 605; 42 Ga., 250; A. and E. Enc. Law, vol. 2, p. 444; 49 Ark., 207; Will. Eq., p. 257; 18 Pac. Rep., 926.

2. While it may be that an antecedent debt, standing alone, is not a sufficient consideration, it will be sufficient if there is any other consideration besides, as where notes are given up or additional property given in exchange. Am. and E. Enc. Law, vol. 8, p. 843; 18 Pac. Rep., 658.

3. Knowledge of the mere insolvency of a purchaser is not alone ground to prevent a sub-purchaser from being a *bona fide* purchaser. 4 So. Rep., 658; see 18 Pac. Rep., 926.

*Marshall & Coffman* for appellee.

1. The definition of a *bona fide* purchaser is found in 1 Perry on Trusts, 239, and was adopted in 49 Ark., 214. See also Willard's Eq., 257. It seems to be conceded by counsel that the satisfaction of an antecent debt alone, without surrendering any security, is not a valuable consideration (the dictum in 27 Ark., 560 notwithstanding), and such is the weight of authority. 18 Pac. Rep., 926; 36 N. Y., 129.

2.    Does the payment of a part in cash, in addition to the extinguishment of the debt, change the rule?   Appellants certainly would not be protected except to the amount of the new consideration.    36 Ia., 348; 3 S. & R. (Pa.), 423; 44 Ark., 53–4; 29 Barb. (N. Y.), 507–8; 37 Barb., 458.

4.    Appellant had at least constructive notice. 14 Ark., 69.

Hughes, J.   Appellee sued appellant in replevin for a carload of stoves, sold by him to one E. B. Outlaw, then a merchant at Rector, Arkansas, who it was claimed procured the sale of said stoves by fraudulent representations as to his solvency, and with the intent not to pay for the same. Appellant claimed to hold said stoves as agent of George Taylor Commission Company and Adler-Goldman Commission Company, who it was said bought the same, together with other goods worth in all $4900, from said Outlaw, without notice of any fraud, in settlement of his debt to them, aggregating $4100, the excess of $800 being paid by them in cash.

The court gave the following instruction to the jury, to-wit:   "Even if it be shown that Outlaw procured the stoves through fraud, if he has sold them to an innocent purchaser, plaintiff cannot recover.   But if the parties who now hold the stoves took them with other goods amounting to about the value of forty-nine hundred dollars, in satisfaction of past-due debts from Outlaw to them, and only paid the excess of goods over the debts, amounting to about eight hundred dollars, in money, this alone would not be sufficient to constitute them innocent purchasers, if the other goods received by them were more than sufficient to cover all the money expended by them, and there be nothing going to show that said parties are not in as good a position now as they were before the trade with Outlaw."   The appellant excepted, moved for a new trial, which was denied, to which he excepted and appealed.

We think the proof in the case supports the theory that the sale of the stoves by appellee to E. B. Outlaw was in-

duced by the fraudulent representations of the latter, and
that Outlaw sold the stoves with his entire stock of goods
to the George Taylor Commission Company and the Adler-
Goldman Commission Company, for whom the appellant
held them at the time of the institution of this suit as their
agent; that the consideration for the sale by Outlaw was
the satisfaction, at the time of the sale, of a previous indebt-
edness of his to the purchasers—for whom the appellant held
the goods as agent—of $4100, and $800 additional paid by
them for Outlaw to a bank at Cairo, Ill. There is no proof
that, at the time of this purchase and payment of the con-
sideration, the purchasers had notice of the fraud of Outlaw
in inducing the sale to him by the appellee.

Were the purchasers *bona fide* purchasers, within the rule *Bona fide* pur-
in equity, and entitled to have their purchase protected chaser defined.
against the equity of the appellee, the original vendor. " A
*bona fide* purchaser has been decided to be one who at the
time of his purchase advances a new consideration, surrenders
some security, or does some other act which leaves him in a
worse position if his purchase should be set aside, and pur-
chases in the honest belief that his vendor had a right to
sell, without notice, actual or constructive, of any adverse
rights, claims, interests, or equities of others in and to the
property sold." *Fargason* v. *Edrington*, 49 Ark., 207, 214;
1 Perry on Trusts, sec. 239.

It has been decided in this State that, upon a sale and
delivery of goods induced by fraud, the title to the goods
passes to the fraudulent vendee, subject of course to the
right of the vendor to rescind and retake the goods from
the fraudulent vendee or any purchaser from him with no-
tice of his fraud. This seems to be according to the weight
of authority in other States. *Hamilton* v. *Ford*, 46 Ark.,
245; *Henderson* v. *Gibbs*, 18 Pacific Rep., 926; *Paddon* v.
*Taylor*, 44 N. Y., 371; *Kingsbury* v. *Smith*, 13 N. H., 109;
*Robinson* v. *Fairbanks*, 81 Ala., 132–134.

There is a decided conflict in the decisions of the courts,
and in the reasons by which they are supported, upon the

question, whether a pre-existing indebtedness is alone suffi-
cient to constitute a purchaser of personal property, to whom
the same has been delivered without notice of an adverse
equity, a *bona fide* purchaser for value, within the rule in
equity that would protect him against the equities of another
against the same property existing at the time of the pur-
chase.    See *Basset* v. *Nosworthy*, 2 White & Tudor's Lead-
ing Cases in Equity, part I, p. 85, *seq.*; 2 Pomeroy's Eq. Jur.,
sec. 748.    But we are relieved in this case from the necessity
of deciding that vexed question.

In the case at bar there was a valuable and substantial
consideration of $800 paid, in addition to the satisfaction of
the debts of the purchasers against the fraudulent vendee of
the appellee; and this is sufficient to support the purchase
and protect the purchasers against the recovery of the prop-
erty from them by appellee, on account of the fraud of his
vendee.    They, having acquired the legal title by purchase
from Outlaw for a valuable consideration paid without notice
of appellee's equity, are equally innocent with him, and their
title will be protected.    Where equities are equal, the law
will prevail.    *Baggarly* v. *Gaither*, 2. Jones, Equity (N. C.),
80; 2 Pomeroy's Eq. Jur., sec. 747; *Glidden* v. *Hunt*, 24
Pick., 221; *Kingsbury* v. *Smith*, 13 N. H., 109.

In the case of *Kingsbury* v. *Smith*, it is held that " a fraud-
ulent purchase of personal chattels, accompanied with de-
livery, is not void, but voidable only at the election of the
vendee; and, until the sale is avoided, the vendee has full
power to make a valid sale of the chattels to a *bona fide*
purchaser, having no notice of the fraud."    And that " it is
sufficient, to enable such subsequent purchaser, without
notice of the fraud, to maintain the title to the chattels con-
veyed to him, as against the party defrauded by his vendor,
that some portion of the consideration was paid at the time
of the purchase."

The sale in that case of a colt was a consideration of the
cancellation of a previous indebtedness of the fraudulent
vendee to the purchaser, and the delivery to the fraudulent

vendee, as a further consideration, of an overcoat, without notice to the purchaser of any equity in favor of the original vendor; and this was held sufficient to constitute the purchaser of the fraudulent vendee a *bona fide* purchaser, and sufficient to maintain his title to the colt. The court said, in reasoning, that, if either party was in fault, it was the original vendor, who put his vendee in a position to deceive the sub-purchaser; and applied the rule, "applicable in a large class of cases, that in case of two innocent persons, if loss comes, it must fall on him who, through negligence, or carelessness, or inadvertence, is the occasion of the loss sustained."

It follows that the third instruction given by the circuit court to the jury was erroneous.

The judgment is reversed, and the cause remanded for a new trial.