PARK *v.* BANK OF LOCKESBURG.

Opinion delivered December 17, 1928.

*Lake, Lake & Carlton,* for appellant.

*Steel & Edwards,* for appellee.

HART, C. J., (after stating the facts). The decree of the chancery court was wrong. It seems to have proceeded upon the theory that the note given for the certificate of stock and the certificate of stock itself were absolutely void under article 12, § 8, of our Constitution, which reads as follows:

"No private corporation shall issue stocks or bonds except for money or property actually received or labor done, and all fictitious increase of stock or indebtedness shall be void; nor shall the stock or bonded indebtedness of any private corporation be increased, except in pursuance of general laws, nor until the consent of the persons holding the larger amount in value of stock shall be obtained, at a meeting held after notice given for a period not less than sixty days, in pursuance of law."

In construing this clause of our Constitution, this court has held that a note given for the purchase price of corporate stock is neither money nor property actually received within the meaning of the Constitution, and that the note itself is void. *Bank of Dermott* v. *Measel,* 172 Ark. 193, 287 S. W. 1017. It was also held in that case that the same defenses which the maker of the note might have made to an action by the holder might be made on a renewal note. The reason given was that the renewal note was not a payment of the original note, but was merely an extension of the time of payment of it. The court did not mean to hold, however, that the note was absolutely void.

In the later case of *Bank of Manila* v. *Wallace,* 177 Ark. 190, 5 S. W. (2d) 937, the court again held that a note given to a representative of a corporation in selling its stock, for stock in such corporation, was void under the provisions of the Constitution above referred to, and the fact that the note was negotiated at a bank and that the corporation received the money therefor did not render the note valid. The court held, however, that there

could be an innocent purchaser of such a note, and, if that is true, it could not be said that the note was absolutely void.

This same view has been taken by the Supreme Court of Texas, under a similar section of the Constitution of that State. *Washer* v. *Smyer,* 109 Texas 398, 211 S. W. 985, 4 A. L. R. 1320. The reason for so holding was stated in a clear and comprehensive manner as follows:

"There is no declaration in the constitutional provision that a transaction in which something other than money, property, or labor is received in payment for the corporation's stock shall be utterly void. It prohibits such a transaction, and therefore makes it unlawful, but that is the extent to which it goes. If a security be accepted in payment for the stock, such, for instance, as a subscriber's note, which is not property for such a purpose, the Constitution does not say either that it or the stock issued for it shall be void. The acceptance of the note in payment for the stock and the issuance of the stock are only interdicted. The word 'void' is used but once in the constitutional provision, and that, it is to be noted, is not in the clause which prohibits the issuance of stock for other than money, property or labor. It is in the distinct clause which says that all fictitious increases of stock or indebtedness shall be void. While the term is found in that clause of the section, the framers of the Constitution avoided its use in the other. It must be assumed that they did so deliberately. There is an essential difference between prohibiting a certain form of transaction—making it unlawful—and declaring that it, with all securities issuing out of it, shall be utterly void. It is a distinction familiar in the law. In order to hold a negotiable note unenforceable in the hands of a *bona fide* holder, it is not enough that it be founded upon an illegal consideration. It is not sufficient that it issue from a transaction prohibited by law, or one even denounced as criminal. To avoid it in the *bona fide* holder's hands there must be a constitu-

tional or statutory provision which expressly, or by unavoidable implication, declared it or the transaction of which it is a part to be void. Such is the rule announced by Chitty, Story and Daniel. It is the rule followed by this court, and generally by courts elsewhere.''

The distinction made by the learned Chief Justice in that case has been recognized by this court in the construction of article 19, § 13, of our Constitution, which provides, in effect, that all contracts for a greater rate of interest than ten per centum per annum shall be void as to principal and interest, and that the General Assembly shall prohibit the same by law. The court said that, where a statute or Constitution declares a contract void, it gathers no validity by its circulation in respect to the parties executing it, but that it and the instrument evidencing it are void in the hands of every holder. *German Bank* v. *Deshon,* 41 Ark. 331.

By reference to the section of the Constitution under consideration in the case at bar, it will be seen that the contract was not declared void, as was the case under our provision relating to usury. Hence it may be said to be the law of this State that, there being no constitutional declaration to that effect, the contract under consideration in this case is not absolutely void, and the note given by T. W. Park to the Bank of Lockesburg for the forty shares of stock would be valid in the hands of an innocent purchaser for value. If the note would have been valid in the hands of an innocent purchaser for value, it would seem that this rule would likewise be applied to the holder of stock in payment for which the note was given.

In *Bankers' Trust* v. *McCloy,* 109 Ark. 160, 159 S. W. 205, 47 L. R. A. (N. S.) 333, it was held that the purchaser of shares of stock is chargeable with notice of liens created under statutes or charters, but not those arising under the by-laws of the corporation or under the custom of dealing between the corporation and its shareholders. It was further held that shares of stock in a corporation do not constitute negotiable paper within the law merchant,

but are treated as *prima facie* evidence of unincumbered ownership of the holder thereof named in the certificate and upon the books of the company, and that a purchaser of stock under such circumstances is entitled to have the shares recorded upon the books of the company in his name. In discussing the question the court said:

"Shares of stock in a corporation do not constitute negotiable paper within the law merchant, but in some of the authorities such instruments are spoken of as possessing elements of *quasi*-negotiability, and the modern authorities lay down the rule that necessities of business require the shares of stock should be treated *prima facie* as evidence of unincumbered ownership of the holder thereof named in the certificate and upon the books of the company."

At the time that decision was rendered, § 1720 of Crawford & Moses' Digest was in force. That section provides that every certificate of stock shall be deemed personal property, and shall be transferable on the books of the corporation in such form as the directors shall prescribe; and such corporation shall at all times have a lien upon the stock of its members for debts due from them to the corporation. This section of the statute, however, has been repealed as to corporations generally by act 387 of the Legislature of 1923, which was entitled "An act to regulate the transfer of corporate stock." General Acts of 1923, p. 358. Section 15 of that act provides that there shall be no lien in favor of a corporation upon the shares represented by a certificate issued by such corporation, and that there shall be no restriction upon the transfer of shares so represented by virtue of any by-law of such corporation or otherwise, unless the right of the corporation to such lien or the restriction is stated upon the certificate. No such right was stated upon the certificate of stock in the case at bar.

Again, § 1720 was expressly amended with regard to banks by act 627 of the same Legislature, General Acts of 1923, p. 515. Section 16 of that act expressly provides that § 1720 of the Digest shall be amended so

as to read as follows: "The stock of every such corporation shall be deemed personal property, and be transferred only on the books of such corporation in such form as the directors may prescribe."

Thus it will be seen that the lien given to the corporation under § 1720 of the Digest has been repealed.

Now, the undisputed facts show that T. W. Park borrowed from S. P. Park $800 and agreed to pay him ten per cent. interest from the date of the note given for the debt until payment thereof. The forty shares issued by the Bank of Lockesburg to T. W. Park were transferred and delivered by him to S. P. Park as collateral security for the repayment of said loan. There is nothing whatever that tends to impair the good faith of this transaction or to show that S. P. Park had any knowledge whatever that the certificate of stock had been issued to T. W. Park by the bank and his note taken in payment for it. The stock certificate was regular in form, and carried no notice whatever of any infirmity upon its face. There is no testimony in the record whatever to impugn the good faith of S. P. Park in making the loan and taking the transfer of the stock certificate as collateral security therefor. Therefore he was an innocent purchaser for value of the stock certificate, and was entitled to have the same sold in satisfaction of his lien.

It appears from the record that a sale had been made, and that S. P. Park became the purchaser at the sale ordered by the chancery court. The court then should have ordered a transfer of the stock upon the records of the bank in the name of S. P. Park, instead of canceling the certificate of stock as being absolutely void. For that error the decree must be reversed, and the cause will be remanded with directions to the chancery court to direct a transfer of the stock upon the records of the bank in the name of S. P. Park, and for such further proceedings as may be necessary according to the principles of equity and not inconsistent with this opinion. It is so ordered.