CLARK *v.* FREELING.

4-5099                                    120 S. W. 2d 375.

Opinion delivered October 17, 1938.

George W. Watson, J. A. Tellier and Buzbee, Harrison, Buzbee & Wright, for appellants.

Verne McMillen, H. B. Stubblefield and Walter L. Pope, for appellees.

McHaney, J. Counsel for appellants have correctly stated the question for consideration by this court as follows: "The question before the court on this appeal is the validity of certain mutual certificates issued by the Mutual Loan & Investment Company which is now in the process of liquidation under a state receivership. The certificates were issued by the loan company about six months prior to its receivership, to one C. R. Prunty, who thereafter assigned them to Freeling and others, appellees on this appeal.

"The Mutual Loan & Investment Company was placed in the hands of a receiver by order of the Pulaski chancery court on January 10, 1936, upon application of the State Bank Commissioner.

"Freeling and others filed claims against the loan company in the receivership proceedings based upon the certificates which they obtained from Prunty. W. B. Clark and others, creditors of the loan company, who are appellants on this appeal, intervened in the receivership proceedings to contest the claims of Freeling and others, based on these certificates, contending that the certificates were not legal obligations of the loan company, and Freeling and others, who held them by assignment, were not bona fide creditors.

"Freeling and others responded, denying the allegations of Clark and others, interveners.

"The chancery court held that the certificates of the loan company issued to Prunty and by him assigned to Freeling and others were void for want of consideration, but that Clark and others, as creditors, stood in the shoes of the loan company and its receiver, and as such were estopped from challenging the validity of the certificates

because of certain representations made by Virgil Pettie, president, and Guy W. Ross, secretary, of the loan company, to the effect that the certificates would be paid when due. From this decree Clark and others have appealed as against Freeling and others.

"After the issues were made up between these appellants and appellees and all the testimony as to them had been taken, the Pyramid Life Insurance Company, assignee of one of the certificates originally issued to Prunty, and whose rights under the certificate had been contested by Clark and others as above set out, filed a supplemental response and cross-complaint against Prunty and his wife. In this pleading the Pyramid Life Insurance Company joined Prunty and wife as parties to the suit. It charged fraud on the part of Prunty in the procurement of certain life insurance from it for which it accepted the certificates in question, and prayed that the insurance policies which it had issued to Prunty in exchange for the certificate assigned to it by Prunty be cancelled and declared invalid and surrendered up, along with certain premium receipts issued by it to Prunty, and that it have a money judgment against Prunty for the amount of two annual premiums, which would cover the risk which it had assumed and the two-year period during which the policy had been kept in force.

"Prunty and wife answered and denied the allegations of the cross-complaint and prayed that the suit of the life insurance company against them be dismissed.

"On this phase of the case the lower court held that the loan company certificates issued to Prunty and by him assigned to the life insurance company were also void because issued without consideration, and accordingly granted the relief prayed by the Pyramid company and cancelled the insurance policies which it had issued to Prunty.

"Prunty and wife have appealed on the issues as made up between them and the insurance company, and are, therefore, appellants as to the insurance company.

"Clark and others as creditors and interveners did not participate in the proceedings between Prunty and wife and the insurance company."

The Mutual Loan & Investment company was an Arkansas-corporation, with rather broad powers authorizing it to lend and borrow money and "to issue bonds, debentures or obligations of this corporation from time to time for any of the objects or purposes of this corporation and to secure the same by mortgage, pledge, deed of trust or otherwise." It had an authorized capital stock of $150,000, but only approximately $101,000 of same was sold. It began business in December, 1929, and from then until 1932, it made small loans of from $100 to $300, but in February of 1932, it loaned appellant Prunty $2,000, and in June of said year it loaned one Dr. J. A. Tiller $6,000. In 1935, it loaned said Tiller and son $35,000, which was afterwards paid by issuance to it of stock in the Watson Rubber Stem Tube Company, a corporation, of the par value of $61,500 and which was later surrendered to the Watson Company for a patent right to what was called the Even-Flo Safety Tank and a selling right to another device called Gwynn Vulcanizer. These devices or patents were not readily, or at all, convertible into cash and the financial condition of the Mutual Company was becoming very acute. Prunty was employed to dispose of them. He fell upon the happy thought, whether original or otherwise, of organizing a corporation in Illinois to engage in the coal mining business, which would purchase said devices or assets of the Mutual, and pay for same with its promissory notes. So the Gulf Fuel & Mining Company was organized with a capital stock of 20,000 shares of which the Mutual Company got 11,000 shares, and it purchased from the Mutual said devices for $150,000, executing its notes therefor, of which the Mutual received $61,500 in notes and Prunty received $88,500 in notes. Prunty then traded $30,000 of his Gulf notes to the Mutual for $30,000 of its bonds or full paid certificates which bore interest at 7 per cent. per annum and payable in the future. Prunty thereafter sold some of these certificates to appellees who, before purchasing, were assured by the president and secretary of the Mutual Company that said certificates were the valid and binding obligations of said company, and would be paid when due.

Appellee, Pyramid Life Insurance Company, received $1,500 face value of said certificates from Prunty and issued to him four life insurance policies for $5,000 each, the annual premiums thereon amounting to $680.40, for said certificates. The agent negotiating this deal being authorized for this particular transaction and no other.

Under this state of the record the trial court held that the certificates issued by the Mutual Company to Prunty and by him assigned to appellees, Freeling *et al.*, were without consideration and invalid, but that appellants stood in the shoes of the Mutual Company and its receiver, and as such, were estopped from asserting their invalidity because of the representations made by its president and secretary to appellees. From this decree appellants, Clark *et al.*, have appealed as against Freeling *et al.* As to the appellee, Pyramid Life Insurance Company, the court likewise held the certificates invalid, granted the relief prayed by it, including a cancellation of said policies to Prunty. Prunty and wife, she being the beneficiary in said policies, have appealed on this phase of the case.

Disposing of the appeal of the Pruntys first, we are of the opinion that the court correctly held that the certificates held by Prunty were fraudulent, invalid and issued without consideration, which fact was known to Prunty, and the policies issued to him should be canceled. When the notes above mentioned were executed by the Gulf Fuel and Mining Company, its only asset, except the patent rights sold to it by the Mutual Company, was a lease on a coal mine of doubtful value under any conditions, but wholly without value at the time as it was subject to cancellation for failure to operate, and it was impossible to operate without the expenditure of a large sum of money for necessary equipment, and it had no funds for this or any other purpose. This is shown by the fact that Prunty paid $3,000 to the Mutual Company on the Gulf Fuel & Mining Company notes to keep them from defaulting while he was trying to dispose of his Mutual certificates. But it is contended that Pyramid Life is estopped from denying the validity of said cer-

tificates. We cannot agree. It is true that the soliciting agent was assured by the officers of the Mutual Company that the certificates were valid and would be paid, but there is no evidence that the Pyramid Life was so advised or accepted same with any such knowledge on the part of any officer of the company. Knowledge of a soliciting agent is not imputable to the company. *Sadler* v. *Fireman's Fund Ins. Co.*, 185 Ark. 480, 47 S. W. 2d 1086; *Nat. Life & Accident Ins. Co.* v. *Davison*, 187 Ark. 153, 58 S. W. 2d 691.

As to the other appellees, we also agree with the learned trial court. Both parties agree that the certificates issued by the Mutual Company were issued without consideration and are invalid. It is contended by appellants that these certificates are bonds within the meaning of Art. XII, § 8, of the Constitution and are void. It reads as follows: "Section 8. No private corporation shall issue stocks or bonds, except for money or property actually received or labor done, and all fictitious increase of stock or indebtedness shall be void; nor shall the stock or bonded indebtedness of any private corporation be increased, except in pursuance of general laws, nor until the consent of the persons holding the larger amount in value of stock shall be obtained at a meeting held after notice given for a period not less than sixty days in pursuance of law." Even so, we cannot agree that they are void in the hands of appellees who are innocent holders for value. It is not disputed that they paid a valuable consideration for them, but it is said they were not negotiable instruments, but only assignable, and that they took with notice. Even so, they made inquiry from the proper officers and were assured of their validity before purchasing. At least one of appellees had dealt frequently in like certificates issued by the Mutual Company, in large amounts and they had never missed a payment. Being assured by said officers of their validity and that they would be paid, neither the company itself, its receiver, nor its creditors can be heard to insist to the contrary, in the absence of a showing of fraud or collusion. The certificates were regular in form and carried no notice whatever on the face of them of any infirmity.

There is no evidence to impugn the good faith of appellees in purchasing the certificates. They were, therefore, innocent purchasers for value and protected as such from the quoted constitutional provision. We so held in *Park v. Bank of Lockesburg*, 178 Ark. 669, 11 S. W. 2d 483, and in *Taylor* v. *Hilderbrand Poster Adv. Co.*, 187 Ark. 53, 58 S. W. 2d 211, where certificates of stock were involved. Assuming that the certificates here involved are bonds within the meaning of said provision of the Constitution, there can be no valid distinction between this case and those above cited.

No error appearing, the decree is affirmed.

DONHAM, J., disqualified and not participating.