GWATNEY *v.* ALLIED COMPANIES, INC. OF ARK.

5-3331                                                      385 S. W. 2d 940

Opinion delivered January 25, 1965.

*Tommy H. Russell* and *Ruby E. Hurley, Spitzberg, Bonner, Mitchell & Hays,* By: *Beresford L. Church, Jr.,* for appellant.

*H. B. Stubblefield,* for appellee.

ED. F. McFADDIN, Associate Justice. This litigation concerns some of the affairs of an insurance company,

last named Great Security Life Insurance Company, formerly named Great Eastern Assurance Company and also Great Eastern Life Insurance Company. We will use the words "Great Security" for said insurance company.

On June 6, 1963, Allied Companies, Inc. of Arkansas (sole appellee here) filed this suit in the Pulaski Chancery Court against Great Security, Arkansas Memorial Gardens, Inc., Tommy H. Russell, Harold Gwatney, H. J. DeArmon, and E. J. DeArmon.[1] The germane portion of the complaint alleged:

(a)   that Great Security was indebted to Allied Companies, Inc. of Arkansas (hereinafter called "Allied") in the sum of $19,672.42 and interest for cash loans;

(b)   that Great Security purported to have issued 150,000 shares of its stock to Arkansas Memorial Gardens, Inc. for 698 burial spaces, but that such attempted issue was unauthorized and the entire transaction should be set aside and the stock cancelled;

(c)   that the said 150,000 shares of stock in Great Security was transferred by Arkansas Memorial Gardens, Inc. to Harold Gwatney, but that he was not an innocent or bona fide holder for value and that said Gwatney should be enjoined from transferring said stock until trial herein, when the stock should be cancelled; and

(d)   that H. J. DeArmon and E. J. DeArmon should be enjoined from reissuing or rewriting any policies for Great Security and/or receiving any commissions.

A temporary injunction was issued, upon the plaintiff making bond, to prevent the transfer of the stock or the paying of excessive commissions to H. J. and/or E. J. DeArmon. Each and all of the named defendants filed general denials. Trial in the Chancery Court, with evidence taken *ore tenus,* resulted in a decree: (1) awarding Allied a judgment against Great Security for $20,-

---

[1] There were two other individuals named originally as defendants, but as to them the complaint was reserved for future determination, so they passed out of this case.

372.46, debt and interest; (2) cancelling the 150,000 shares of Great Security stock issued to Arkansas Memorial Gardens, Inc. and the deed from Arkansas Memorial Gardens, Inc. to Great Security for the 698 burial spaces; (3) declaring the stock certificates for said 150,000 shares then held by Harold Gwatney to be void and to be cancelled; and (4) that the temporary injunction had been rightfully issued and there was no liability on the bond.

From such decree all of the named defendants except Arkansas Memorial Gardens, Inc. have prosecuted this appeal. Harold Gwatney has filed a separate brief, but all the other defendants (appellants)[2] have joined in one brief. In all, a total of five points are listed by appellants, but we will discuss these under our own topic headings.

I. *The Judgment In Favor Of Allied.* It was definitely established that Allied had actually furnished cash to Great Security in excess of $25,000.00; that $5,500.00 of the amount had been repaid; and that the balance was still due and owing. The judgment in favor of Allied against Great Security for the amount awarded was correct.

II. *Bond Liability.* The Court was correct in issuing the temporary injunction against the transfer of the stock pending trial, and in preventing the payment of excessive commissions to the DeArmons. The Court was correct in holding that there was no liability on the said bond.

III. *The Issue Of Stock To Arkansas Memorial Gardens, Inc. For Burial Spaces.* Some time in 1962 Great Security issued 150,000 shares of stock[3] to Arkansas Memorial Gardens, Inc. for 698 burial spaces. It was

---

[2] These defendants-appellants who here united in one brief are: Great Security, Tommy H. Russell, H. J. DeArmon, and E. J. DeArmon.

[3] Part of this stock was issued to North Hills Memorial Gardens, which was connected with Arkansas Memorial Gardens, Inc. We treat the two as one. The decree cancelled the conveyance of the burial spaces to Great Security, and Arkansas Memorial Gardens, Inc. has not appealed.

shown that Allied owned substantial number of shares of stock in Great Security and, as such stockholder, it assailed the transaction.

Ark. Stats. Ann. § 66-2628 (Repl. 1957) states the conditions under which an insurance company may invest in real estate; and there is no evidence in the record before us that would make legal the issuance of insurance company stock for these cemetery lots. Allied, as a stockholder in Great Security, had a right to attack the issuance of the stock for the cemetery lots in this suit since both the Arkansas Memorial Gardens, Inc. and Great Security were defendants; and Allied, as a stockholder in Great Security before and at the time of the issuance of the stock for the cemetery lots, made proof that its stock rights were adversely affected by such issuance. 18 C.J.S. p. 702, "Corporations" § 249. The Chancery decree declared the issuance of the 150,000 shares for the burial spaces to be an unauthorized act, and we affirm the decree.

IV. *The Status Of Harold Gwatney As The Present Holder Of The 150,000 Shares Of Stock.* This is the most troublesome issue in the case. The Trial Court held that the stock certificates for the 150,000 shares should be cancelled, even in the hands of Harold Gwatney; and he has appealed from that decree and claims that he is a bona fide holder for value of the said certificates. He introduced evidence that he borrowed $37,500.00 from Tommy Russell and paid it to Arkansas Memorial Gardens, Inc. and received the stock certificates for the 150,000 shares and had the same transferred to him on the books of Great Security. If he is a bona fide purchaser for value of the said stock certificates, then the certificates cannot be cancelled. In *Park* v. *Bank of Lockesburg,* 178 Ark. 669, 11 S. W. 2d 483, we held that a corporation could not claim the invalidity of the original issue of a stock certificate as against a person who, subsequent to the original issue, acquired the stock as a bona fide holder.[4] Ark. Stats. Ann. § 85-8-301 *et seq.* (Add. 1961)

---

[4] The majority of other jurisdictions hold to the same effect. See 13 Am. Jur. p. 328, "Corporations" § 219; 18 C.J.S. p. 702, "Corpora-

is a part of the Uniform Commercial Code, and reads in part:

". . . (2) a bona fide purchaser in addition to acquiring the rights of a purchaser also acquires the security free of any adverse claim. . . ."

Was Harold Gwatney a bona fide purchaser for value? The cases hold that one who claims to be a bona fide purchaser of stock which is or was originally invalidly issued, has the burden of proving himself to be a bona fide purchaser. In 18 C.J.S. p. 708, "Corporations" § 252, the text reads: "The burden of establishing his status as a bona fide purchaser for value is upon one who alleges it." Black's Law Dictionary defines "bona fide" as being "in or with good faith; honestly, openly, and sincerely; without deceit or fraud. Truly; actually; without simulation or pretense . . ." And the same dictionary defines a "bona fide purchaser" as "a purchaser in good faith for valuable consideration and without notice.[5]

In the light of the foregoing statements as to the burden of proof and the definition of a bona fide purchaser, we turn to the evidence to see whether Harold Gwatney established his claim as a bona fide purchaser. He testified that he and Russell had been together in several corporations; that he was interested in another insurance company and purchased this stock in Great Security in order to attempt a merger of the two companies. He admitted that before he bought this stock he checked the financial statement of Great Security. The auditors testified in detail as to the financial statement of Great Security. It was insolvent. If Gwatney even saw such statement of Great Security he knew that the company was insolvent. Thus, with knowledge that Great

tions" § 249; Fletcher's Cyclopedia of Corporation Law, Permanent Ed., Vol. 12, p. 631, § 5542; and see annotations in 73 A.L.R. p. 1435; and 78 A.L.R. 2d 834, particularly p. 876.

[5] Some of our own cases considering the matter of a bona fide purchaser are: *Fargaon* v. *Edrington*, 49 Ark. 207, 4 S. W. 763; *Woolridge* v. *Thiele*, 55 Ark. 45, 17 S. W. 340; *Henry Wrape Co.* v. *Cox*, 122 Ark. 455, 183 S. W. 955; and *Shuffield* v. *Raney*, 226 Ark. 3, 287 S. W. 588.

Security was insolvent, Gwatney testified that he borrowed $37,500.00 from Tommy Russell, who was president of Arkansas Memorial Gardens, Inc., and paid that amount to Arkansas Memorial Gardens, Inc. and its subsidiary, North Hills Memorial Gardens, for the said 150,-000 shares of stock in Great Security. What of the $37,-500.00 note that Gwatney executed to Russell? It has not been paid. Here is Gwatney's testimony:

"Q. Have you paid the money back yet?

"A. No, sir, and I am not going to pay him either until this is settled.

"Q. You mean you are going to see about the stock before you pay it?

"A. Yes, sir. I mean there is no need of me paying him until this is settled. This is the man I dealt with."

Mr. Russell was Gwatney's codefendant and his attorney in this case and never made any protest when Gwatney said that he was not going to pay the note until his lawsuit was settled. So it is doubtful if Gwatney will ever pay anything. With all of this evidence, and other in the record, the Trial Court found that Gwatney had not sustained the burden of proving himself to be a bona fide purchaser for value; and after a careful study of the record we cannot say that such finding is against the preponderance of the evidence; so we affirm the decre of the Trial Court.

It is well here to add that pending this appeal Great Security was declared insolvent and placed in the hands of the Insurance Commissioner of Arkansas and he has filed his appearance in this appeal.

Finding no error, the decree is affirmed.