Cletus BYRD, Leonard BRUMMETT, and Andrew HOGELAND v. SECURITY BANK

5-5453                                          464 S. W. 2d 578

Opinion delivered March 22, 1971

*Rhine & Rhine,* for appellants.

*Douglas Bradley,* for appellee.

CARLETON HARRIS, Chief Justice. This appeal is brought by three farmers, Cletus Byrd, Leonard Brummett, and Andrew Hogeland from adverse decrees[1] of the Clay County Chancery Court which found *inter alia,* that these appellants were indebted to appellee, Security Bank, in various amounts by virtue of promissory notes which they had executed to Parsons Gin Company and which Parsons had subsequently assigned to the appellee bank. Parsons' Gin Company was not incorporated and was only a name used by Jimmy Parsons, the owner. These notes were sued on by Security Bank in December, 1968, and Kennett Bank of Kennett, Missouri, intervened in each case alleging that it held notes from each of the appellants and also had liens superior to those of appellee, on the assets of these farmers.

From the evidence it would appear that sometime prior to the execution of the notes sued on, these farm-

---

[1]These suits were brought separately but were consolidated for trial.

ers had executed notes to Parsons Gin Company with financing statements as security. These notes were assigned by Parsons Gin Company to Security Bank, but the financing statements were retained by Parsons and filed in its name.

On or about January 26, 1968, the appellants each signed other notes to Parsons Gin Company, simply signing blank notes. Without appellants' knowledge or consent, Jimmy Parsons of Parsons Gin Company filled in the notes for varying amounts and on February 3, 1968, assigned them to Security Bank as consideration for the release of the prior notes and other notes which Parsons had previously assigned. Parsons once again kept the financing statements in the Gin Company's name.

The farmers then wished to borrow money from Kennett Bank, but after a lien search, that bank found the financing statements to Parsons and would not make the loans until these statements had been released. At Kennett Bank's request, Parsons released the financing statements in March of 1968. Kennett bank then filed financing statements from these farmers as security late in March of 1968 and made loans to the appellants as evidenced by notes signed by them on or about April 8, 1968.

On June 20, 1968, Security Bank discovered that Parsons had released the financing statements and to recover its former position, had Parsons assign these statements to it with the words "This statement replaces a prior one to secured party, released by error, when the secured party intended to merely subordinate the lien".

When the notes assigned to Security Bank became due, and after demand, were not paid, these suits were brought, Kennett Bank intervening shortly thereafter. The trial court found the lien of Kennett Bank to be superior to that of Security Bank, but that finding is not involved in this appeal. For reversal of the decree in favor of Security Bank, appellants contend that the lower court erred in finding that appellee, Security Bank, was a holder in "due course" and an "innocent

purchaser" of the notes and security transferred to the bank by "Parsons Gin Company".

It is argued that at the time appellee took the assignment of the second group of notes, no money was advanced by the bank to Parsons, and that appellee knew Jimmy Parsons was in financial straits, and should have known that he did not have sufficient money to advance the amounts mentioned in the notes, to the three appellants. The amounts of the notes were Byrd, $9,500, Brummett, $18,000, and Hogeland, $1,000. It is true, as previously stated, that no money was advanced to Parsons at that time, these notes being given in lieu of the original notes, and also being applied on other indebtedness due by Parsons.

Ark. Stat. Ann. § 85-3-302 (Add. 1961) defines a holder in due course as one who takes the instrument for value, and in good faith, and without notice that it is overdue or has been dishonored, or of any defense against, or claim to it, on the part of any persons.

We do not agree that appellee was not a holder in due course. The instrument was taken for value, and we need look no further than Ark. Stat. Ann. § 85-3-303 (b), where it is provided that the instrument is accepted for value when it is accepted in payment of, or in security, for an antecedent claim against any person whether or not the claim is due.

There is no evidence that the instrument was not taken in good faith. Let it be remembered that there is no proof, nor is it even suggested, that appellee knew that these notes had been blank when signed by appellants, and that the amounts had been filled in by Parsons. Also, the record reflects that transactions of this nature between the parties had been customary for a number of years, and all had worked out satisfactorily. There is no showing that at the time (February 3, 1968) the notes were taken, the bank officials had any reason to believe that Parsons had committed any fraud, or that he was in bad financial condition. Testimony on the part of the bank was that this fact did not come to its attention until June 20, when appellee dis-

covered that Parsons had released its security in March. Were it otherwise, while there might well be a duty on the officers of a bank to check or investigate prospective debtors of the bank as a matter of protecting that institution, we find nothing in the commercial code that compels such a duty on the part of the bank as a matter of protecting the prospective debtor.

Finally, in determining whether the bank was a holder in due course, the notes were not overdue, nor had they been dishonored. Nor is there evidence, as already stated, that the bank was aware of any defense on the part of any person. Appellants say that if the Security Bank had checked in the office of the Circuit Court Clerk, it would have found that the Kennett Bank had filed financing statements from appellants as security, said statements covering substantially the same property which had been covered in the financial statements securing appellee's indebtedness; that appellee would accordingly have been put on notice that "something was wrong". We disagree. The evidence reflects that appellee did not learn until June that Parsons had released the financing statements, and that Kennett had a lien on the properties. The Kennett financing statements were not filed until March 30, and it will be recalled that the Security financing statements had been filed in January. Appellee could not possibly have known about the latter filing unless it checked the clerk's records each day, week, or month to determine if the original financing statements were still in effect. Under the circumstances of this case, we cannot see where there was any duty on appellee to go over and check the records regularly to see if it still held effective security. There simply wasn't any reason for this to be done. Of course, this litigation could not have arisen except for appellants signing blank notes. The one fact that contributed most to the situation in which appellants now find themselves, is that they imprudently signed these blank instruments, and in doing so, failed to act as prudent persons.

It is also argued that James Parsons was operating under the assumed name of "Parsons Gin Company", and in doing so, was in violation of Ark. Stat. Ann.

§ 70-401-405 (Repl. 1957).[2] A penalty of a fine of not less than $25.00 nor more than $100.00 is provided for violation. We fail to grasp the significance of this argument, and consider it entirely irrelevant to the issue of whether the bank was a holder in due course. Whether Parsons properly complied with the aforementioned sections, which are entirely unrelated to the provisions of the Uniform Commercial Code, can have no effect on this litigation. If Parsons ignored or disobeyed the law, he is subject to a fine. Though the question of the liability of appellants cannot be affected by the failure of Parsons to file the required certificate, we do wonder how the bank could have learned that he had violated the law if he had not filed such a certificate.

Affirmed.

---

[2]The statute, *inter alia,* provides that no person shall conduct or transact business under an assumed name unless such person shall file in the office of the county clerk a certificate setting forth the name under which the business is to be conducted, together with the true name of each person conducting or transacting said business.